COMMONWEALTH *vs.* HAMILTON MANUFACTURING COMPANY.*

SAME *vs.* BOSTON WHARF COMPANY.

HENRY K. OLIVER *vs.* CORNWALL COPPER MINING COMPANY.

The legislature have power, by a general law, to require corporations organized here to pay to the treasurer of the Commonwealth a tax upon the excess of the market value of all the capital stock thereof over the value of their real estate and machinery taxable in the city or town where they are situated; and the fact that a corporation owns, as a part of its personal property, bonds of the United States, and that a portion of its stockholders live in other states of the Union, will not exempt it from liability to pay the full amount of such tax.

This doctrine applies to mining corporations.

THE *first* of these actions was an action of contract against a manufacturing corporation, chartered by *St.* 1824, *c.* 44, to recover a tax assessed by the Commonwealth under *St.* 1864, *c.* 208.

It was agreed, in the superior court, that the cash market value of the defendants' capital stock was duly ascertained and determined by the commissioners under said last named statute to

---

* These cases were argued in November 1865.

be $1,230,000, and the value of their real estate and machinery, returned under the same act, was $939,400, upon which valuation taxes were assessed in Lowell, where the real estate and machinery were situated, for the year 1864, and were paid by the defendants; the excess of the cash market value of the capital stock over the value of the real estate and machinery being $290,600. On the 1st of May 1864, the defendants, in addition to their real estate and machinery, had personal property standing on their books valued at $263,997.75; and also bonds of the United States to the amount of $300,000.

Upon these facts, judgment was ordered for the defendants; and the Commonwealth appealed to this court.

The *second* was an action of contract against a wharf corporation, to recover a tax assessed under the same statute.

It was agreed, in the superior court, that the cash market value of the defendants' capital stock was duly ascertained and determined to be $600,000, on the 1st of May 1864, and the value of their real estate, (they having no machinery,) returned under the same act, was $425,000, upon which valuation taxes were assessed in Boston, where the real estate was situated, for the year 1864, and were paid by the defendants; the excess of the cash market value of the capital stock over the value of the real estate being $175,000. A portion of the stockholders at the time of the assessment resided out of Massachusetts and in other of the United States. The market value of the stock is variable. On the 1st of May 1864, the defendants had personal property to the amount of $4347.26, and owned no other personal property, and owed $97,200. The city of Boston never taxed the stockholders for their shares, but put the whole tax upon the real estate.

Upon these facts, judgment was ordered for the Commonwealth; and the defendants appealed to this court.

The *third* was an action of contract against a mining corporation, to recover a tax assessed under the same statute.

It was agreed, in the superior court, that the tax as claimed

was assessed in conformity to said statute, and that the officers of the Commonwealth have in all respects complied with the provisions of said statute in assessing it, and that the plaintiff is entitled to a verdict for the amount claimed, provided the statute is valid and constitutional.

Upon these facts, judgment was ordered for the Commonwealth; and the defendants appealed to this court.

*D. Foster*, for the Hamilton Manufacturing Co., cited *Weston* v. *City Council of Charleston*, 2 Pet. 449; *People* v. *Tax Commissioners*, 23 N. Y. 192; *S. C.* 26 N. Y. 163; *Bank of Commerce* v. *New York*, 2 Black, 620; *Bank Tax case*, 2 Wallace, 200; *Passenger cases*, 7 How. 458.

*S. W. Bates & G. O. Shattuck*, for the Boston Wharf Co.

No counsel appeared for the Cornwall Copper Mining Co.

*Reed*, A. G., for the Commonwealth.

BIGELOW, C. J. It is too clear to admit of discussion that, according to recent adjudications of this court, the assessment which is the subject of controversy in these actions must be supported, if sustained at all, as an exercise by the legislature of the authority conferred by that clause in the constitution, part 2, *c.* 1, § 1, art. 4, which gives the power of imposing reasonable duties and excises upon any "commodities" within the Commonwealth; in other words, it cannot be held valid unless it can be construed to be in the nature of an excise on the franchise of the corporations designated in *St.* 1864, *c.* 208, §§ 1, 5, and not a tax on the property belonging to them. The decisive reason why it cannot be supported as a tax on property, in the sense in which that phrase is used in the constitution in the article cited, is, that it is not "proportional;" that is, it is not laid according to any rule of proportion whatever, but is imposed only on the corporations designated in the act, without any reference to the amount required to be raised by taxation for public purposes, or to the actual property held by such corporation subject to taxation, or to the whole amount of property in the Commonwealth liable to be assessed for the public service. *Commonwealth* v *People's Five Cents Savings Bank*, 5 Allen, 428, 431. *Oliver* v. *Washington Mills*, 11 Allen, 268, 274.

The only question then is, whether there is anything in the nature of the assessment in question, or in the manner in which it is imposed, or in the method prescribed for ascertaining the amount which each corporation is to pay, which renders the act under which it is imposed invalid and unconstitutional, as authorizing an excise or duty on the franchise or privilege of corporations. It certainly cannot be contended that the legislature can legitimately impose a tax on property in the name or under the guise of levying an excise or duty. Such legislation would be a palpable evasion of a distinct and clearly defined constitutional restriction, and would substitute an unequal and arbitrary system of taxation upon property for one which was intended by the constitution to be equal and proportional. If the practical operation and effect of an assessment authorized by an act of the legislature would be to levy a tax on the property of certain individuals or corporations from which all others were exempt, so as to throw on a particular class a disproportionate share of the burdens of raising money for public purposes without any equivalent benefit, it would be the duty of the court to declare it to be an unauthorized act of legislative power, irrespective of the particular form in which the assessment or tax might be imposed. The validity of the act would depend on the substantial nature and operation of its provisions, and not on the formal language in which they were expressed, or on the mode in which they were to be carried into effect. But, on the other hand, it is to be borne in mind that by the well settled rules of exposition a presumption always exists in favor of the validity of an act of the legislature, and that it will not be declared void unless it appears clearly to be a violation of the fundamental principles of government; and that, where the language of the legislature is fairly susceptible of two interpretations, that one is to be adopted which will sustain an act as within the limits of legislative authority under the constitution, rather than one which will defeat it on the ground that it is an excess or abuse of power.

Looking at the material provisions of the act by virtue of which the assessment in controversy is imposed in the light of

these familiar principles, we cannot say that a reasonable construction of them necessarily leads to the conclusion that the assessment is in fact a tax on the property of the corporations therein designated, and not an excise or duty laid on their respective franchises. It certainly is not in terms imposed on the corporate property, nor do we think it is so in effect or substance. The statute does not require that there should be any return made of the personal property held by corporations to the board of commissioners who are to fix the amount on which the assessment is to be reckoned, nor is there any valuation or estimate of such property to be made in order to arrive at the amount of the excise or duty. The market value of all the capital stock of each corporation, after deducting the real estate and machinery, if any, belonging to it, is the prescribed basis on which the calculation is to be made, and by which the excess is to be ascertained on which the assessment is laid. If the legislature had intended to impose a tax on the property of corporations, exclusive of their real estate, it would have been easy to ascertain the exact amount liable to such assessment, by requiring returns setting forth the nature and value of all the personal estate of which each was possessed. There would have been no doubt that a tax imposed on the amount so ascertained would have been a pure property tax. But they adopted a very different rule or standard of taxation. The market value of the shares of a corporation, or the aggregate market value of all the shares, by which we understand the cash price for which the shares will sell in the market, does not necessarily indicate the actual value or amount of property which a corporation may own. The price for which all the shares would sell may greatly exceed the aggregate of the corporate property, or it may fall very far short of it. Undoubtedly the amount of property belonging to a corporation is one of the considerations which enters into the market value of its shares; but such market value also embraces other essential elements. It is not made up solely by the valuation or estimate which may be put on the corporate property, but it also includes the profits and gains which have attended its operations, the prospect of its future

success, the nature and extent of its corporate rights and privileges, and the skill and ability with which its business is managed. In other words, it is the estimate put on the potentiality of a corporation, on its capacity to avail itself profitably of its franchise, and on the mode in which it uses its privileges as a corporate body, which materially influences and often controls its market value.

Familiar examples will illustrate this. Thus, the shares in a corporation may have a market value and sell for a high price before any of its capital stock has been paid in, or it has acquired any corporate property. In such a case, it is the estimate put on its franchise and the expectation of the benefits and advantages to be derived from it which give it a value. So there may be two corporations organized with similar powers, having the same number of shares, the same amount of property or capital, and both may be engaged in the same branch of business. The market value of the shares in one corporation may be double that of the other, because one is prosperous and likely to make large gains, while the other is unsuccessful, and is carrying on a business which may prove unprofitable or lead to heavy losses. Another illustration is furnished by the condition of one of the corporations now before us as defendants. Nearly the whole corporate property consisted, on the 1st day of May 1864, of real estate which was valued by the assessors of the city of Boston, according to returns made by them under the provisions of the statute, at four hundred and twenty-five thousand dollars, at which time the corporation was indebted in the sum of about ninety-five thousand dollars, and had on hand, received for rents, &c., only about four thousand three hundred dollars, that being the whole amount of personal property owned or possessed by them ; and yet on the said first day of May the market value of the shares of said corporation was at par, or in the aggregate its capital stock was worth in the market six hundred thousand dollars ; clearly showing that this market value could not have been founded on a valuation of the property of the corporation, but on the estimate of the worth of its corporate franchise and privileges and the prospect of future gains and profits from the property which it possessed

These illustrations serve to show that an assessment based on the market value of the shares of a corporation or of the aggregate of said shares or capital stock cannot be properly deemed a tax on the property of the corporation. As has been already said, the estimate put on the shares of a corporation and constituting this market value may and often does include the property of the corporation as one of the elements on which it is based; but such value does not represent such corporate property, pure and simple, reckoned at its actual value as a present interest belonging to the corporation, but rather a right or interest in the property held by the corporation in combination with the corporate franchise and privileges and constituting a part thereof, and in the profits and future earnings which may result from the use of the property in the corporate business. That this was the theory on which the statute was founded is made manifest from the fact that the tax is not based on the capital stock paid in, nor yet on the par value of the shares, but on the aggregate value of the shares ascertained by the price paid in the market for the shares when sold as the separate property of the stockholders. It is from the amount so ascertained that the value of the real estate and machinery is to be deducted, in order to determine the sum on which the assessment is to be laid. The tax is therefore laid, not on capital stock as signifying the money paid in to carry on the business of the corporation or the property purchased therewith and owned by the corporation, but on capital stock representing the aggregate of the market value of the shares. The price for which shares are sold does not depend on the value or amount of property belonging to a corporation, but rather on the capacity of the corporation to use its property in connection with its corporate powers and privileges advantageously and profitably, and upon the present prosperity, prospective earnings and probable final results of the corporate business. It would seem to follow from these views that the valuation which the public put on the stock of a corporation, as shown by sales and purchases of the shares, cannot be justly regarded as a valuation of the property of the corporation; nor can it be so considered in the assessment authorized by § 5 of the statute. It is the

capital stock considered as a franchise, embracing the whole corporate organization, with all its rights and privileges of which the shares are constituent fractional parts, that forms the subject matter on which the tax or assessment is imposed. Nor are we able to see any reason why the aggregate market value of all the shares of a corporation, representing as it does the estimate put, not merely on the property of the corporation, but also on the rights, privileges, capacities and present and prospective results of the corporate organization and business — in other words, on its franchise — is not a legitimate and just method of arriving at a basis on which to calculate an excise or tax. Inasmuch as the market value of the shares is generally a sure indication of the value of all that appertains to or belongs to the corporation, corporeal and incorporeal, the aggregate market value of all the shares or stock affords a reasonable and equitable mode of meas-- uring the value of the franchise. It certainly furnishes a more accurate standard than the capital of a corporation actually paid in; *Portland Bank* v. *Apthorp*, 12 Mass. 252; or than the amount of corporate business transacted during a specific period of time. *Commonwealth* v. *People's Five Cents Savings Bank, ubi supra.* A tax graduated by the amount of capital paid in may operate unequally and inequitably, because the capital may be impaired by losses or greatly increased by profits. The amount of business done in a given period may not always furnish a true standard of the value of corporate privileges, because it may sometimes be carried on disadvantageously and without gain, and at other times with great success and profit. But the market value of the shares taken in the aggregate at the time of assessing the tax would be likely to show with approximate accuracy the actual existing value of the rights, privileges and benefits conferred by the franchise.

It was suggested that the deduction of the value of the real estate and machinery from the aggregate market value of the stock allowed by the statute was an indication that the tax was in fact a tax on property, and not an excise on the franchise. But we do not think that much weight can be given to this consideration. The reason for the deduction is obvious. The real

estate and machinery of corporations, under the general tax act, are subject to local taxation in the towns where they are situated. Inasmuch as all taxes on corporate property operate to take away a portion of that which would otherwise belong to shareholders, it would tend to inequality and to double taxation, if, in assessing the excise on the franchise, no deduction were made for what was taxed in a different manner elsewhere. It was this consideration, doubtless, which led to the allowance of the deduction, as a similar one was permitted in *St.* 1862, *c.* 224, imposing the amount of tax on savings banks. See *Commonwealth* v. *People's Five Cents Savings Bank, ubi supra.* But we do not see that this provision has any bearing on the nature of the tax imposed by the statute in question.

The result, then, to which we have come on this part of the case is, that the tax in question was intended to be and is an excise on the franchise of corporations, and not on their property ; that the imposition of it was a lawful exercise of legislative power under the constitution, and that the mode of measuring the value of the franchise by the market value of the whole stock, allowing the element of deduction as equitable in its general effect, is just, reasonable and valid.

But it is urged in behalf of one of the defendants in these actions, (the Hamilton Manufacturing Company,) that although the assessment may be deemed to be a valid exercise of the power to impose an excise on " a commodity " or franchise under our constitution, it nevertheless operates as an indirect tax on property, and that, in cases where it is imposed on corporations which are the holders of bonds of the United States issued or money lent to the government, it violates the long established ule that, under the constitution of the United States, the bonds or other securities for money lent to the national government in the hands of individuals and corporations are exempt from taxation under the laws of the several states, and it also contravenes the express provisions of the several acts of congress authorizing the issue of bonds, which in terms exempt them from taxation.

To our own minds, it is a sufficient and decisive answer

to this argument, that, according to the views we have already expressed, the assessment in question is an excise or duty on the franchise of the corporations on which it is imposed, and was intended by the legislature to have that operation and effect only, and that it is not in any just or proper sense a tax on corporate property.

But it is insisted that this question has been substantially adjudicated and settled otherwise by the supreme court of the United States in recent cases involving the same question which have been before that tribunal, arising under certain statutes of the state of New York, imposing a tax on banking corporations there established. If this were so, we certainly should yield our own views and acquiesce without hesitation in any decision of the tribunal appointed to expound the laws and declare the extent of the powers of the national government, upon any question coming within the scope of the jurisdiction delegated to it under the constitution and laws of the United States. But a careful examination and consideration of the cases cited satisfy us that there is a clear distinction between them and the cases now before us. This will be made apparent by a recurrence to the course of legislation in the state of New York in regard to the imposition of taxation on corporations and corporate property in that state, and contrasting it with the systems heretofore adopted in our own state in relation to the same subject matter.

By the general laws regulating taxation in New York, it is provided that all lands and personal estates within the state, whether owned by individuals or corporations, shall be liable to taxation, subject only to certain exemptions. N. Y. Rev. Sts. *c.* 13, tit. 1, § 1. By § 3, it is provided that personal estate shall be construed to include " such portion of the capital of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate." By § 6 of tit. 2, art. 1, it is enacted that " all the personal estate of every incorporated company, liable to taxation on its capital, shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be ; " and

if the company have no such office or place, then where the operations of such company shall be carried on. By § 1 of tit. 4, it is further provided that " all moneyed or stock corporations, deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital." Subsequent sections prescribe the mode in which the assessors shall ascertain the amount of valuation upon which such corporations shall be set down in their lists for their personal property tax.

There can be no doubt that under these provisions any tax assessed on corporations, other than that on their real estate, must necessarily in its effect be a tax on their personal estate, whatever may be the method adopted to ascertain the amount of valuation of such estate on which the assessment is to be laid. Now by reference to the statutes of the state of New York passed in the years 1857 and 1863, under which the taxes were assessed which were adjudged invalid in the cases cited, it will be found that they made no change in the nature or character of the tax or in the mode of assessment, but only in the method of arriving at the basis of valuation of the property on which the tax was to be laid; the former providing that the capital stock should be estimated at its actual value and taxed in the same manner as other personal and real estate; the latter requiring that the tax should be imposed on a valuation equal to the amount of the capital stock paid in or secured to be paid in, and the surplus earnings, less ten per cent. of such surplus. But under both statutes the tax itself was in accordance with the general tax acts already cited, and was in all its essential features a tax on the property of the corporation. Besides ; under the laws of New York a portion of the capital of banks was required by the laws of the state to be invested in public securities, in order to furnish a safe basis for bills which the banks were authorized to issue ; and thus the bonds of the United States held by banks in effect constituted a part of the property or capital of the banks on which the tax was imposed.

But the legislation of this commonwealth in relation to taxation differs essentially from that of New York. Under the general laws regulating taxation in Massachusetts, corporations have

never been liable to taxation for any personal estate owned by them, with the exception of machinery, which, on account of its fixed character and connection with the buildings in which it is used, has been regarded as in the nature of real estate, and so taxable in the place where it is situated. All other taxation, so far as it bore on corporate property, prior to the enacting of the statute in question, was uniformly assessed on the stock as represented by the shares belonging to the individual stockholders, and was taxed to them according to the number of shares held by each in their respective places of abode, on a valuation ascertained by the market value of the shares, irrespective of the amount of property held by the corporation. These shares were declared by the statute to be personal property, for the purpose of taxation; Gen. Sts. c. 11, § 4; and were so treated, although the whole or a large part of the corporate property may have consisted of real estate, as in wharf, mining and water power corporations, and the like. Gen. Sts. c. 61, §§ 5, 10; c. 68, § 20. This tax on shares was clearly not a tax on the property of the corporation, but on the right or interest of each stockholder in the whole corporate organization, its franchise and privileges, as has already been explained, estimated at its market value. *Queen* v. *Arnaud*, 9 Q. B. 806, 817. *Utica* v. *Churchill*, 33 N. Y. 161, 237.* We are unable to see how a tax on the aggregate market value of the shares assessed to a corporation can be a tax on the corporate property, if a tax on the same shares at a like valuation to the stockholders on their respective shares cannot be properly so regarded. It is a tax based on the incorporeal right of holding shares in a corporation and participating in the benefits of the franchise, estimated at its market value, whether assessed to the corporation on the aggregate of the value of all the shares, or to each stockholder on the market value of the separate shares.

This view is confirmed by a consideration of the details of the act of 1864, c. 208, and comparing them with the previous enactments on the same subject. The same returns, which

---

* See also *Van Allen* v. *Assessors*, 3 Wallace, 573.

previously to the passage of this act were required for the purpose of assessing the value of the shares to the separate stockholders at their respective places of residence, are still to be made in order to carry into effect the present statute; so, too, the separate stockholders are exempted from taxation for their respective shares, to which they were subject prior to its enactment, and the proceeds of the tax when collected are to be paid out to the several cities and towns in the Commonwealth where the stockholders may reside, in proportion to the number of shares held by stockholders resident in each city and town. These provisions seem to indicate very clearly that the valuation is still essentially the same as before, although its mode of assessment and collection is changed; that it is a valuation of the aggregate of the shares as a franchise; and that such aggregate value represents not merely the corporate property, but also the rights, privileges, immunities and benefits of the corporate organization constituting the franchise. If therefore the mode of valuation tends at all to establish the position that this is a property tax, it tends also to show it to be a tax, not upon the property of the corporation, but rather upon the property of the individual shareholder — to wit, the shares — imposed upon the corporation instead of the several shareholders, for convenience. But for other reasons already stated we are satisfied that it must be regarded as a tax of an entirely different nature, to wit, an excise, which is the only form in which it could be imposed at all.

But assuming, for the sake of the argument, that we are mistaken in the nature and character of the tax in question, and that it would be deemed to be a tax on property, and not an excise or duty levied on a franchise within the scope and reasoning of the decision of the supreme court of the United States in the cases cited, we are nevertheless at a loss to understand how it can be maintained by the Hamilton Manufacturing Company that any tax has been assessed upon the bonds of the United States held by that corporation on the first day of May 1864. The facts do not show that the bonds of the United States were included in the valuation on which the tax was assessed. On the contrary, it appears that they were excluded

The value of the real estate and machinery of the corporation, by the returns made pursuant to the statute, was nine hundred and thirty-nine thousand four hundred dollars. The market value of all its shares was determined to be twelve hundred and thirty thousand dollars, leaving as the basis on which the tax was to be assessed two hundred and ninety thousand six hundred dollars. For reasons which do not appear, this sum was reduced by the assessors to two hundred and seventy thousand six hundred dollars, and the tax or excise was calculated on this amount. But it appears that the corporation had at that very time in their possession and ownership, personal property which, taken at their own valuation, amounted to two hundred and sixty-three thousand nine hundred and ninety-seven dollars and seventy-five cents, exclusive of machinery, and three hundred thousand dollars in bonds of the United States, making the amount of personal estate in their hands five hundred and sixty-three thousand nine hundred and ninety-seven dollars and seventy-five cents. The tax was calculated only on two hundred and seventy thousand six hundred dollars, thus excluding from the calculation an amount nearly equal to the full amount of the bonds of the United States held by the corporation. In fact, the valuation put by the tax commissioners on the aggregate value of the shares of the corporation exceeded only by about seven thousand dollars the value of the personal estate, as it stood on the books of the corporation, excluding the whole amount of the bonds of the United States which they then held. How then can it be said that these bonds were assessed? There was sufficient personal property belonging to the corporation, estimated according to the requirements of the act, to warrant the assessment, excluding the bonds of the United States. There certainly is no presumption, in the absence of all evidence, that the tax was levied on these bonds, unless it can be held not only that the tax was laid on property but also that it was laid on property which is exempt by law. In other words, in order to render the tax invalid upon the grounds set up, it must be held, in the absence of proof, that the presumption is that public officers assessed a tax on property exempt by law, instead of

on property which was properly subject to taxation. A court of law cannot act on any such forced or unwarrantable deduction.

The result is, that in the judgment of the court the defend· ants were justly liable to assessment for the sums imposed upon them respectively, and that there must be

*Judgment for the Commonwealth.*