## THE MACALLEN COMPANY *v.* MASSACHUSETTS.

No. 578. Argued April 25, 1929.—Decided May 27, 1929.

*Mr. Thomas Allen* for appellant.

*Mr. R. Ammi Cutter,* Assistant Attorney General of Massachusetts, with whom *Mr. Joseph E. Warner,* Attorney General, was on the brief, for appellee.

*Messrs. Seth T. Cole* and *Stuart G. Knight* filed a brief as *amici curiae* on behalf of the Tax Commission of New York, by special leave of Court.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

A statute of Massachusetts, G. L. c. 63, § 32, as amended by Stat. 1923, c. 424, § 1, provides:

"Except as otherwise provided in sections thirty-four and thirty-four A, every domestic business corporation shall pay annually, with respect to the carrying on or doing of business by it, an excise equal to the sum of the following, provided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of the fair cash value of all the shares constituting its capital stock on the first day of April when the return called for by section thirty-five is due:

"(1) An amount equal to five dollars per thousand upon the value of its corporate excess.

"(2) An amount equal to two and one half per cent of that part of its net income, as defined in this chapter, which is derived from business carried on within the commonwealth."

By G. L. c. 63, § 30, par. 5, as amended by Stat. 1925, c. 343, § 1A, " net income " is defined—

"' Net Income,' except as otherwise provided in sections thirty-four and thirty-nine, the net income for the taxable year as required to be returned by the corporation to the federal government under the federal revenue act applicable for the period, adding thereto any net losses as defined in said federal revenue act that have been deducted, and all interest and dividends not so required to be returned as net income except dividends on shares of stock of corporations organized under the laws of the commonwealth and dividends in liquidation paid from capital."

Before this amendment, the definition embodied in G. L. c. 63, § 30, par. 5, as amended, shortly before the passage of the last quoted amendment, by Stat. 1925, c. 265, § 1, provided:

" ' Net income,' except as otherwise provided in sections thirty-four and thirty-nine, the net income for the taxable year as required to be returned by the corporation to the federal government under the federal revenue act applicable to the period, adding thereto any net losses as defined by said federal revenue act that have been deducted, and, in the case of a domestic business corporation, such interest and dividends, not so required to be returned as net income, as would be taxable if received by an inhabitant of this commonwealth; less, both in the case of a domestic business corporation and of a foreign corporation, interest, so required to be returned, which is received upon bonds, notes and certificates of indebtedness of the United States."

Thus, under the original definition of net income, there was expressly excluded from the net income taxable at two and one-half per cent all interest received upon bonds, notes and certificates of indebtedness of the United States. And the definition had the effect of excluding, in the same respect, interest on state, county and municipal bonds.

Appellant, a business corporation organized under the laws of Massachusetts, owned a large number of United States Liberty bonds and Federal Farm Loan Bonds. The Liberty bonds by statute of the United States are expressly made exempt from all taxation imposed by any state, except estate or inheritance taxes. C. 56, 40 Stat. 288, 291, § 7. Federal Farm Loan bonds are issued under authority of c. 245, 39 Stat. 360, and, by § 26, p. 380, declared to be instrumentalities of the United States and both as to principal and income exempt from all state taxa-

tion. The corporation also owned a large number of bonds of Massachusetts counties and municipalities which, when issued and acquired by the corporation, were exempt from taxation by the terms of a state statute. G. L. c. 59, § 5, par. 25. Of course, in respect of United States securities, the statutory exemption is superfluous. A state tax, however small, upon such securities or interest derived therefrom, interferes or tends to interfere with the constitutional power of the general government to borrow money on the credit of the United States, and constitutes a burden upon the operations of government, and carried far enough would prove destructive. The principle set forth a century ago in *Weston* v. *Charleston,* 2 Pet. 449, 468, has never since been departed from by this Court:

" The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government; to any extent, however inconsiderable, it is a burden on the operations of government. It may be carried to an extent which shall arrest them entirely."

*Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 513.

The taxing authorities of the state assessed against appellant, for the year 1926, a tax under the provisions of the then-existing statute as first above quoted, adding, for the purpose of computing the assessment, to the amount of the net income of appellant as determined by the federal income tax returns of appellant, all sums of interest received by appellant from the foregoing United States, Farm Loan, and county and municipal bonds. Without this addition, and under the original definition of net income, the amount of the tax assessed would have been materially less.

Appellant paid the amount assessed under protest and brought a petition for abatement of the tax under the provisions of the state law, setting forth the foregoing facts

and alleging the unconstitutionality, under the federal Constitution, of the statute insofar as it was held to include interest derived from the tax-exempt securities: (1) as impairing the obligation of contracts; (2) as an attempt to impose a tax upon income derived from securities and instrumentalities of the United States; (3) as depriving petitioner of its property without due process of law and denying it the equal protection of the law in violation of the Fourteenth Amendment; (4) as an impairment and in derogation of the power of Congress to borrow money on the credit of the United States; and for other reasons not necessary for present purposes to be set forth.

A Justice of the Supreme Judicial Court sustained a demurrer to the petition. On appeal, this was affirmed by the full court, and the petition dismissed. That court, through its Chief Justice, delivered a carefully drawn opinion, reviewing numerous decisions of this Court bearing upon the question involved. The tax was held to be not a tax on income, but an excise " with respect to the carrying on or doing of business," as the statute itself in form declares. While it was plain that the tax was larger than it would have been if the income from the tax-exempt securities had not been added to the other items in making up the factor of " net income," the court held that the income was not taxed, but simply employed together with the other items in ascertaining the measure for computing the excise.

The words of the act and the opinion of the state court as to the nature of the tax are to be given consideration and weight; but they are not conclusive. As it many times has been decided, neither state courts nor legislatures, by giving the tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect. *Choctaw & Gulf R. R.* v. *Harrison,* 235 U. S. 292, 298; *Galveston, Harrisburg, &c. Ry. Co.* v.

*Texas,* 210 U. S. 217, 227. And this Court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the state court, it is declared to be, namely, an excise tax on the privilege of doing business, or, under the guise of that designation, is in substance and reality a tax on the income derived from tax-exempt securities. If, by varying the form,—that is to say, if, by using one name for a tax instead of another, or imposing a tax in terms upon one subject when another is in reality aimed at,—the substance and effect of the imposition may be changed, constitutional limitations upon powers of taxation would come to naught. The rule is otherwise. To this effect, the following cases may be cited as illustrative.

A tax laid in terms on the occupation of an importer is in effect a tax on imports. *Brown* v. *Maryland,* 12 Wheat. 419, 444. Answering the contention that a state may tax an occupation, and that this tax was nothing more, Chief Justice Marshall said:

" It is impossible to conceal from ourselves, that this is varying the form, without varying the substance. It is treating a prohibition which is general, as if it were confined to a particular mode of doing the forbidden thing. All must perceive, that a tax on the sale of an article, imported only for sale, is a tax on the article itself. . . . So, a tax on the occupation of an importer is, in like manner, a tax on importation. It must add to the price of the article, and be paid by the consumer, or by the importer himself, in like manner as a direct duty on the article itself would be made. This the state has not a right to do, because it is prohibited by the constitution."

A tax on the income of an office is a tax on the office itself, and cannot be laid in that form if the office be exempt. *Dobbins* v. *The Commissioners of Erie County,* 16 Pet. 435.

A tax on sales made by an auctioneer is a tax on the goods sold, and, where such goods are imported and sold for the importer, the law authorizing the tax is void as imposing a duty on imports. *Cook* v. *Pennsylvania*, 97 U. S. 566.

A stamp tax upon a bill of lading is in substance and effect a tax upon the thing transported, because of its necessary association with the shipment. *Almy* v. *California*, 24 How. 169, 174. And see *Woodruff* v. *Parham*, 8 Wall. 123, 138.

In *Indian Oil Co.* v. *Oklahoma*, 240 U. S. 522, 530, a tax upon oil leases of lands of Indians under the protection of the federal government, made by authority of such government, was held void as being in fact a tax upon the power to make the leases and capable of being used to destroy such power. It was said that since the lessees were federal instrumentalities the state could not tax their interest in the leases either directly or as they were represented by the capital stock of the corporations owning them. "A tax upon the leases is a tax upon the power to make them, and could be used to destroy the power to make them. If they cannot be taxed as entities they cannot be taxed vicariously by taxing the stock, whose only value is their value, or by taking the stock as an evidence or measure of their value, rather than by directly estimating them as the Board of Equalization and the referee did."

In *Federal Land Bank* v. *Crosland*, 261 U. S. 374, this Court condemned, as beyond the constitutional power of the state, a statute subjecting mortgages executed to a Federal Land Bank to the payment of a recording tax, as being in effect a tax upon the mortgages.

It is not necessary to extend the list of cases of like effect.

The court below predicates its decision upon a series of decisions of which *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 163–165, is the extreme example, holding that a tax lawfully imposed upon the exercise of corporate privileges within the taxing power may be measured by income from the property of the corporation although a part of such income is derived from non-taxable property. See also *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Society for Savings* v. *Coite*, 6 Wall. 594; *Provident Institution* v. *Massachusetts*, 6 Wall. 611. The distinction pointed out in these cases is between an attempt to tax the property or income as such and to measure a legitimate tax upon the privileges involved in the use thereof. It is implicit in all that the thing taxed in form was in fact and reality the subject aimed at, and that any burden put upon the non-taxable subject by its use as a measure of value was fortuitous and incidental.

The aphorism of Chief Justice Marshall in *McCulloch* v. *Maryland*, 4 Wheat. 316, 431, that "the power to tax involves the power to destroy," has frequently been reiterated by this Court. The principle, of course, is important only where the tax is sought to be imposed upon a non-taxable subject, or, as said in *Knowlton* v. *Moore*, 178 U. S. 41, 60, " . . . the power to destroy which may be the consequence of taxation is a reason why the right to tax should be confined to subjects which may be lawfully embraced therein, even although it happens that in some particular instance no great harm may be caused by the exercise of the taxing authority as to a subject which is beyond its scope." Not only may the power to tax be exercised oppressively, but for one government—state or national—to lay a tax upon the instrumentalities or securities of the other is derogatory to the latter's dignity, subversive of its powers, and repugnant to its paramount authority. See *California* v. *Pacific Railroad Co.*, 127

U. S. 1, 41. These constitute special and compelling reasons why courts, in scrutinizing taxing acts like that here involved, should be acute to distinguish between an exaction which in substance and reality is what it pretends to be, and a scheme to lay a tax upon a non-taxable subject by a deceptive use of words. The fact that a tax ostensibly laid upon a taxable subject is to be measured by the value of a non-taxable subject at once suggests the probability that it was the latter rather than the former that the law-maker sought to reach. If inquiry discloses persuasive grounds for the conclusion that such is the real purpose and effect of the legislation, the tax cannot be upheld without subverting the well-established rule that ". . . what cannot be done directly because of constitutional restriction cannot be accomplished indirectly by legislation which accomplishes the same result. . . . constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation." *Fairbank* v. *United States,* 181 U. S. 283, 294, 300.

In the consideration of such legislation, the controlling principle, constantly to be borne in mind, is that the state cannot tax the instrumentalities or bonds of the United States, or, what is the same thing, the income derived therefrom, directly or indirectly—that is to say, it cannot tax *them* in any form. Words which, literally considered, import a tax upon something else,—a tax, for example, as here, upon the privilege of doing business measured in part by the amount of non-taxable interest received— may, nevertheless, be adjudged to lay a tax upon the interest, if that purpose be fairly inferable from a consideration of the history, the surrounding circumstances, or the statute itself considered in all its parts. See *Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 510, 521.

On the one hand, the state is at liberty to tax a corporation with respect to the doing of its business. On the other hand, the state cannot tax the income of the corporation derived from non-taxable securities. It necessarily follows that the legislature may not, by an artful use of words, deprive this Court of its authority to look beyond the words to the real legislative purpose. And the power and the duty of the Court to do so is of great practical importance. For when the aim of the legislature is simply to tax the former, it is less likely to impose an injurious burden upon the latter than when the aim is directed primarily against the latter. See *Galveston, Harrisburg &c. Ry. Co.* v. *Texas, supra,* p. 227.

In *Miller* v. *Milwaukee,* 272 U. S. 713, this Court had occasion to consider a question quite analogous to that here involved. In that case the state statute exempted the income from bonds of the United States held by corporations, but provided for taxing so much of the stockholders' dividends as corresponded to the income of the corporation not assessed. This Court, holding the tax invalid, said (p. 715):

" It is a familiar principle that conduct which in usual situations the law protects may become unlawful when part of a scheme to reach a prohibited result. If the avowed purpose or self-evident operation of a statute is to follow the bonds of the United States and to make up for its inability to reach them directly by indirectly achieving the same result, the statute must fail even if but for its purpose or special operation it would be perfectly good. Under the laws of Wisconsin the income from the United States bonds may not be the only item exempted from the income tax on corporations, but it certainly is the most conspicuous instance of exemption at the present time. A result intelligently foreseen and offering the most obvious motive for an act that will bring it about, fairly may be taken to have been a purpose of the act. On that

assumption the immunity of the national bonds is too important to allow any narrowing beyond what the Acts of Congress permit. We think it would be going too far to say that they allow an intentional interference that is only prevented from being direct by the artificial distinction between a corporation and its members. A tax very well may be upheld as against any casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them, but it becomes a more serious attack upon their immunity when they are its obvious aim. In such a case the Court must consider the public welfare rather than the artifices contrived for private convenience and must look at the facts."

See also *Northwestern Ins. Co.* v. *Wisconsin,* 275 U. S. 136; *Alpha Cement Co.* v. *Massachusetts,* 268 U. S. 203, 218; *Frick* v. *Pennsylvania,* 268 U. S. 473, 494–495; *Nat'l Life Ins. Co.* v. *United States,* 277 U. S. 508, 519.

A liberal application of the foregoing principles, which find confirmation especially in the later decisions of this Court, is essential to the preservation of the constitutional limitations imposed upon the taxing power of the states. Let it once be conceded that such limitations may be evaded by the adoption of a delusive name to characterize the tax or form of words to describe it, and the destruction of the vitality of these necessary safeguards will soon follow.

In the present case, it appears that the original statute exempted from consideration as a part of the measure of the tax all interest upon the non-taxable securities. The amended act now in force has the effect of repealing this original provision and imposing a burden upon the securities from which, by express language, they had theretofore been free. This was a distinct change of policy on the part of the Commonwealth, adopted, as though it had been so declared in precise words, for the very purpose of subjecting these securities *pro tanto* to the burden of

the tax. This conclusion is confirmed, if that be necessary, by the report of the special commission appointed by the legislature to investigate the subject of taxation of banking institutions, Mass. 1925 House Documents, No. 233, from which we quote:

"Further, the Commission addressed itself to the question of what might properly be considered as 'net income' for the purposes of this proposed tax. The national banks and trust companies in their returns to the federal government and to the State under the 12½% income tax law are allowed certain deductions of income from specified types of securities in addition to the expense of conducting their business, bad debts, losses, etc. The business corporations, also, are allowed the same deductions. In the opinion of the Commission there is no valid reason why, for purposes of this tax, such income exemption should be allowed. Corporations differ from the individual. Business corporations hold tax exempt securities generally, not because they fit into the purpose of their organization, but for the bearing they may have upon tax payments.

"The Commission believes that the income upon which this tax should be laid, so far as national banks are concerned, should be the total net income from whatever source, after the proper deductions have been made for the cost of doing business and losses. So far as relates to the business corporations, the same should be the case in respect to the 2½% part of the excise measure based on net income.

"It is true that this extension of 'net income' for the purpose of this tax would increase the tax which business corporations now pay, but the Commission after investigation believes that such increased tax would be relatively small. Many corporations invested in Liberty Bonds and other government securities during the war for patriotic reasons, which practice, so far as business corporations are

concerned, is not generally prevalent at present, and the Commission believes will not exist in the future to any appreciable extent. So that it is its opinion that such, if any, increased burden upon business corporations will not be appreciable.

" In respect to national banks and trust companies the situation is somewhat different. Considerable in amount of the assets or surplus funds of financial institutions are invested from time to time in securities now exempt from taxation either under federal or state law. The income of banking institutions from these sources is relatively much greater than that of other corporations. In endeavoring to reach a basis for a fair and equitable tax on national banks the Commission, as previously stated in this report was limited to the methods permitted under Section 5219 of the United States Revised Statutes. A tax in the nature of an excise tax upon the income of the bank is an equitable and proper tax, . . ."

This report received the consideration of the legislature and, it is fair to suppose, constituted the basis for adopting the amendment here assailed. The effect of the report is that non-taxable bonds nevertheless should be subjected to the burden of the tax; and, since that could not be imposed directly, the clear intimation is that it be imposed indirectly through the medium of the so-called "excise."

It has been suggested that the object of the change was to conform the taxation of business corporations to that authorized by Congress for the taxation of national banks. Whether under recent federal statutes, states are authorized to impose a tax upon the income from United States bonds held by national banks, we need not stop to inquire. Certainly there is no statute of the United States which undertakes to authorize a state to impose a tax upon such bonds held by other kinds of corporations. And what power Congress has under the Constitution in respect of such authorization we need not now determine.

It is clear that authority, even if given, to impose a tax on federal bonds in the case of national banks does not include, by implication or otherwise, the authority to impose a tax upon such bonds held by ordinary corporations.

It is also suggested in that connection that the amendment in question is necessary, and that its real object was, to avoid discrimination forbidden by federal statutes against national banks. But it is enough to say that if such discrimination would otherwise result it must be avoided by some method which does not involve the imposition of a tax which uniformly for a century has been condemned by this Court as unconstitutional. The state may not save itself from infringing an Act of Congress by violating the Constitution.

We conclude that the amended act in substance and effect imposes a tax upon federal bonds and securities; and it necessarily follows that the act in substance and effect also imposes a tax upon the county and municipal bonds. In both respects, the act is void. As to the former, the act is in derogation of the constitutional power of Congress to borrow money on the credit of the United States, as well as in violation of the Acts of Congress declaring such bonds and securities to be non-taxable; and as to the latter, the act impairs the obligation of the statutory contract of the state by which such bonds were made exempt from state taxation.

*Judgment reversed*

Dissenting opinion of MR. JUSTICE STONE.

Petitioner is a corporation of the State of Massachusetts. Its very existence and the conduct of its business in corporate form are privileges conferred by the state, which, under the Constitution, it may tax. Under the constitution of Massachusetts the present tax can be up-

held only if an excise and it and its predecessors have been consistently sustained as excises. *S. S. White Dental Mfg. Co.* v. *Commonwealth,* 212 Mass. 35, 37; *Portland Bank* v. *Apthorp,* 12 Mass. 252; *Commonwealth* v. *Provident Institution,* 94 Mass. 312; *Commonwealth* v. *Hamilton Mfg. Co.,* 94 Mass. 298, 306; *Eaton Crane & Pike Co.* v. *Commonwealth,* 237 Mass. 523, 527; *Alpha Portland Cement Co.* v. *Commonwealth,* 244 Mass. 547. This interpretation of the nature of the exaction has been repeatedly approved by this Court. *Provident Institution* v. *Massachusetts,* 6 Wall. 611; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; cf. *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, 84; *National Leather Co.* v. *Massachusetts,* 277 U. S. 413; *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203, 216. It is imposed "with respect to the carrying on or doing business," and is collectible only when the corporation has in fact been so engaged during the taxable year, see *Fore River Shipbuilding Corp.* v. *Commonwealth,* 248 Mass. 137, 140; *Attorney General* v. *Boston & Albany R. R. Co.,* 233 Mass. 460. It is measured by the value of the corporate assets (with appropriate deductions for machinery and real estate otherwise taxed) and by net income earned within the state, which this Court has often said are fair measures of the exercise of the corporate franchise. The tax is not measured by gross income as in *Northwestern Mutual Life Insurance Co.* v. *Wisconsin,* 275 U. S. 136, where the validity of an excise measured by net income including that from tax exempt securities of the United States was recognized. The distinction between net income and gross as the measure of a tax is well established. *Peck & Co.* v. *Lowe,* 247 U. S. 165; compare *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, 328. Being on net income, the tax does not vary in exact proportion to the gross income from the tax exempt securities included in the aggregate.

There is no constitutional principle and no decision of this Court, of which I am aware, which would deny to the state the power so to tax the privileges which it has conferred upon petitioner, even though all its property were tax exempt securities of the United States and income derived from them. For seventy years this Court has consistently adhered to the principle that either the federal or state governments may constitutionally impose an excise tax on corporations for the privilege of doing business in corporate form, and measure the tax by the property or net income of the corporation, including the tax exempt securities of the other or income derived from them. *Provident Institution* v. *Massachusetts, supra; Society for Savings* v. *Coite,* 6 Wall. 594; *Hamilton Co.* v. *Massachusetts, supra; Home Insurance Co.* v. *New York,* 134 U. S. 594; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 162–5. In *Flint* v. *Stone Tracy Co.,* a Federal tax on corporations "with respect to carrying on or doing business" measured by net income, was held to be an excise, not a direct tax on property or income, and so was valid, although not apportioned under Art. I, § 2, cl. 3, § 9, cl. 4 of the Constitution and notwithstanding the fact that net income from tax exempt municipal bonds was included in the measure of the tax. In no technical sense does this tax seem open to objection. Being an excise the tax is not one on property or income and may include either in its measurement although not directly taxable.

Upon like principle a state inheritance tax may be measured by including the value of United States bonds of the decedent. *Plummer* v. *Coler,* 178 U. S. 115; *Blodgett* v. *Silberman,* 277 U. S. 1, 12; compare *Greiner* v. *Lewellyn,* 258 U. S. 384. Similarly an excise on a corporation may be measured by its outstanding capital stock, *International Shoe Co.* v. *Shartel, ante,* p. 429; *Hump Hair-*

*pin Co.* v. *Emmerson,* 258 U. S. 290; or by its net income, *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, 120; *United States Glue Co.* v. *Oak Creek, supra,* even though a part of its capital is used in or some of its income is derived from interstate commerce.

It would seem that only considerations of public policy of weight, which appear to be here wholly wanting, would justify overturning a principle so long established. It has survived a great war, financed by the sale of government obligations; and it has never even been suggested that in any practical way it has impaired either the dignity or credit of the national government.

I suppose a certain advantage would be enjoyed by a corporation if the exercise of its corporate franchise in the purchase and use of securities of one government could not be taxed by the other. Theoretically the advantage would inure to each government in the marketing of its securities, just as would be the case if such securities of the taxpayer could not be seized and sold for the payment of any taxes lawfully levied by the state or national government. But the advantage of the one would be gained only at the expense of the other, and it would seem that neither immunity could be claimed under any reasonably practical application of the rule that government instrumentalities may not be taxed. In a broad sense, the taxing power of neither state nor national government can be exercised without having some effect on the other and there are many points at which the exercise of the undoubted power of one affects the other, but " the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with a minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the gov-

ernment imposing the tax . . . or the appropriate exercise of the functions of the government affected by it." See *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, 523.

Granted that a statute otherwise valid may be deemed improper when intended as a covert means of directly burdening ownership of securities of the other sovereignty, see *Miller* v. *Milwaukee*, 272 U. S. 713, I can discern no such sinster purpose in the present legislation. It was, of course, the intention of the Massachusetts Legislature in the amendment of § 30, to deal specifically not alone with federal bonds but with the tax exempt securities of the Commonwealth and its municipalities by including them in the measure of the excise tax. The amendment did not aim at securities of the national government or discriminate against them. It was obviously designed to impose on corporations generally, a tax similar to the excise on national banks, measured by net income, recommended by the legislative committee as a means of avoiding a then existing discrimination. The inclusion in the measure of the tax of income from all tax exempt securities tended only to effect this purpose, a similar computation of net income being contemplated for national banks. But in neither case is there anything to suggest that the legislature intended to impose a direct tax on income or do more than to impose an excise tax, measured by income, including that upon federal bonds, which this Court has declared it may do. Its purpose was to prevent the evasion by corporations of payment of the tax which the Commonwealth had fixed as the price of the privilege of doing business within it in corporate form, by any course of investment of their funds in tax exempt securities, state or national. As this seems to me to be a permissible purpose both on principle and by authority, I think the judgment below should be affirmed.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in this opinion.