REQUESTED BY: Senator Vard R. Johnson Nebraska State Legislature State Capitol, Room 1522 Lincoln, NE 68509
Dear Senator Johnson:
You have requested our opinion on three questions regarding the constitutionality of LB 717 as amended by Senator DeCamp. Generally, the amendment would impose a franchise tax on financial institutions or financial groups, in lieu of the tax imposed under Neb.Rev.Stat. §77-2734.02 (Supp. 1984), at the rate of 5 per cent of the institution's financial net income. The amendment also provides a credit against the tax imposed based on the percentage of average assets invested in exempt securities. The credit for financial institutions with an average investment in exempt securities of 12 per cent or less is one-half of 1 per cent of financial taxable income. The credit for financial institutions with an average investment in exempt securities exceeding 12 per cent is 1 per cent of financial taxable income. In addition, the amendment imposes a limitation on the amount of the tax imposed of 40 cents per thousand dollars of average deposits.
1. Initially, you have asked us to consider whether LB 717, as amended, would operate as an unconstitutional impairment of contractual obligations, in violation of Article I, Section 10 of the United States Constitution. Specifically, you refer to language contained in certain Nebraska statutes which provide the income from certain bonds shall be exempt from taxation. Neb.Rev.Stat. §3-511 (Reissue 1983) (City Airport Authority Bonds); Neb.Rev.Stat. § 18-2125 (Reissue 1983) (Community Development Bonds); Neb.Rev.Stat. § 58-268 (Reissue 1984) (Nebraska Investment Finance Authority Bonds); Neb.Rev.Stat. § 71-1543 (Supp. 1984) (Housing Authority Bonds); Neb.Rev.Stat. § 79-2950 (Reissue 1981) (Educational Facilities Authority Bonds).
In Macallen Co. v. Massachusetts, 279 U.S. 620 (1929), the U.S. Supreme Court held a state excise tax imposed on corporations for the privilege of doing business measured by net income, which included interest on tax exempt obligations, operated to impose a tax on county and municipal bonds and, therefore, was void as impairing the obligation of the statutory contract of the state by which such bonds were exempted from state taxation. In concluding the excise tax violated the constitutional prohibition against the impairment of contractual obligations, the Court in Macallen distinguished the tax imposed from earlier decisions recognizing the validity of franchise taxes measured by net income, including income from tax-exempt obligations, by stating: The distinction pointed out in these cases is between an attempt to tax the property or income as such and to measure a legitimate tax upon the privileges involved in the use thereof. It is implicit in all that the thing taxed in form was in fact and reality the subject aimed at, and that any burden put upon the nontaxable subject by its use as a measure of value was fortuitous and incidental. Id. at 628.
Subsequently, in Pacific Co. v. Johnson, 285 U.S. 480
(1932), the Court held a California franchise tax did not unconstitutionally impair the obligation of contract by adopting as a basis for the tax the entire net income of corporations, including income from tax-exempt municipal bonds. The Court in Pacific Co. stated:
If, as appellant argues, the exemption from taxation of the bonds is contractual and extends to the income derived from them, the question still remains whether the immunity is broad enough to secure freedom from taxation of a corporate franchise, to the extent that it is measured by tax exempt income. * * *
The rule that a tax upon a franchise, measured by net income, including that from tax immune property, is not an infringement of the immunity, was re-examined and affirmed in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342,55 L.Ed. 389, Ann. Cas. 1912B, 1312, which was accepted as authority in Macallen Co. v. Massachusetts, 279 U.S. 620,49 S.Ct. 432, 436, 73 L.Ed. 874 [65 A.L.R. 866], and followed in Educational Films Corp. v. Ward, 282 U.S. 379,51 S.Ct. 170, 75 L.Ed. 400 [71 A.L.R. 1226].
This distinction, so often and consistently reaffirmed, is but a recognition that the franchise, the privilege of doing business in corporate form, which is a legitimate subject of taxation, does not cease to be such because it is exercised in the acquisition and enjoyment of nontaxables. The distinction is one of substance, not of form, and has been so recently discussed in Educational Films Corp. v. Ward that it need not be elaborated here. It suffices to say that the tax immunity extended to property qua property does not embrace a special privilege, the corporate franchise, otherwise taxable, merely because the value of the corporate property or net income is included in an equitable measure of the enjoyment of the privilege. The owner may enjoy his exempt property free of tax, but if he asks and receives from the state the benefit of a taxable privilege as the implement of that enjoyment, he must bear the burden of the tax which the state exacts as its price.285 U.S. at 489, 490.
In upholding the validity of the California franchise tax, the Court in Pacific Co. distinguished the tax from what it characterized as the discriminatory tax invalidated in Macallen Co., stating:
. . . [T]he present act must be judged by its operation rather than by the motives which inspired it. As it operates to measure the tax on the corporate franchise by the entire net income of the corporation, without any discrimination between income which is exempt and that which is not, there is no infringement of any constitutional immunity.285 U.S. at 496.
The Macallen Co. and Pacific Co. cases both recognized that a franchise tax measured by net income, including income from tax-exempt obligations, does not represent an unconstitutional impairment of the statutory immunity from taxation granted such obligations. In Macallen Co., however, the Court held the excise tax unconstitutional as an impairment of the obligation of contract because the tax, although in form denominated an excise tax, was in substance intended to impose a direct tax on county and municipal bonds exempted from taxation by statute.
It should be noted that the U.S. Supreme Court, in a more recent decision, indicated the distinction between a tax imposed "on the privilege of doing business," and a tax on net income, may no longer be considered significant. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977). In Complete Auto, the Court held a state tax imposed on "the privilege of doing business" in the state did not violate the Commerce Clause merely because it applied to activities which were part of interstate commerce. In overruling previous decisions which held a tax on the "privilege" of engaging in an activity in a state may not be applied to activities which were part of interstate commerce, the Court stated: It is clear that Connecticut could have taxed the apportioned net income derived from the exclusively interstate commerce. It could not, however, tax the "privilege" of doing business as measured by the apportioned net income. The reason for attaching constitutional significance to a semantic difference is difficult to discern. Id. at 285.
Applying these principles to the franchise tax imposed under the amendment to LB 717, it appears the inclusion of income from tax-exempt obligations in determining the tax could be construed as an unconstitutional impairment of contract, in light of the Nebraska statutes providing the income from specified bond issues shall be exempt from taxation. While the statutes provide the income from these bonds shall be exempt from taxation, the decision in Pacific Co. indicates this would not preclude the inclusion of the income from such obligations in the determination of a franchise tax based on net income, imposed on financial institutions or groups for the privilege of doing business in the state. Furthermore, the tax does not operate to discriminate between exempt and non-exempt income, a factor emphasized by the Court in Pacific Co..
Based on the U.S. Supreme Court decision in Macallen Co., however, it could be contended the tax imposed under LB 717, as amended, is intended to operate as a subterfuge to tax indirectly income from obligations which are, by statute, granted immunity from direct taxation. This is particularly true in light of the Court's decision in Complete Auto, indicating the distinction between a franchise tax based on net income, and an income tax, may no longer be considered significant. The key consideration may be that the tax, while in form denominated a franchise tax, may be considered to be a tax on income in violation of the immunity from taxation of certain bonds granted by statute. While we cannot affirmatively conclude that the franchise tax proposed under LB 717 would be held unconstitutional, we believe it may be constitutionally suspect on this basis.
2. Your second question concerns whether subsection (2) of section 2 of the amendment, which provides, in part, "[W]henever the amount of deposits at the end of a quarter is reported to a state or federal regulatory agency, the reported amount shall be used to determine average deposits," represents an unconstitutional delegation of legislative authority.
It is well-established that the Legislature may lawfully enact a statute which adopts by reference an existing law or regulation of another jurisdiction, including the United States. State v. Workman, 186 Neb. 467,183 N.W.2d 911 (1971); Anderson v. Tiemann, 182 Neb. 393,155 N.W.2d 322 (1967); Lincoln Dairy Company v. Finigan, 170 Neb. 777,104 N.W.2d 227 (1960). Unless expressly authorized by the Constitution of Nebraska, however, the Legislature may not lawfully enact a statute in which it adopts either administrative rules of a federal agency to be promulgated in the future, or an act of the United States Congress to be passed in the future. Smithberger v. Banning, 129 Neb. 651,262 N.W. 491 (1935).
Subsection (2) of section 2 of the amendment, containing the definition of average deposits, and subsection (6) of section 2, containing the definition of financial net income, both refer to figures "reported to a state or federal regulatory agency" by the financial institution. This language refers to what are commonly known as call reports, which are financial statements financial institutions are required to periodically provide to an appropriate regulatory agency or body.
Pursuant to 12 U.S.C. § 1817(a)(3), all banks insured by the Federal Deposit Insurance Corporation are required to make quarterly reports of condition. Subsections (4) and (5) of § 1817 establish requirements for reporting the deposit liabilities of insured banks, referring to the definition of deposit contained in 12 U.S.C. § 1813(l). State banks are required to file reports of financial condition with the Department of Banking and Finance. Neb.Rev.Stat. § 8-166 (Reissue 1983) provides such reports shall be made "according to the form which may be prescribed by the department." Section 8-167 provides "[E]ach report required by section 8-166 shall exhibit in detail and under appropriate headings the resources and liabilities of the bank at the close of business on any past day specified by the call for report. . . ."
With respect to your question concerning the potential unlawful delegation of legislative authority under the amendment, we believe that, at least with respect to the reference to reports made to federal regulatory agencies, this aspect of the bill would be unconstitutional on this basis. While it is appropriate for the Legislature to adopt by reference existing federal statutes or administrative rules promulgated by federal agencies, the amendment is not, by its terms, so limited. Congress could, in the future, alter the reporting requirements of 26 U.S.C. § 1817(a), or amend the definition of deposits contained in 26 U.S.C. § 1813. It is therefore our opinion that, to the extent the amendment relies upon definitions which may be subject to future statutory changes enacted by the United States Congress, the bill would contain an unconstitutional delegation of legislative authority.
3. Your final question concerns whether the amendment's provision of a credit of one-half of 1 per cent for financial institutions having exempt securities equal to 12 per cent of total assets or less, and a 1 per cent credit for financial institutions having exempt securities in excess of 12 per cent of total assets, would constitute unlawful discrimination. You indicate that, while over 99 per cent of the banks operating in the state have exempt securities in excess of 12 per cent of their total assets, qualifying them for the 1 per cent credit, other financial institutions have exempt securities of less than 12 per cent of their total assets, thus qualifying them for the one-half per cent credit only.
In State ex rel. Douglas v. Marsh, 207 Neb. 598, 607,609, 300 N.W.2d 181, ___ (1980), the Nebraska Supreme Court stated: While the question of classification is one primarily for the Legislature and in the exercise of this power the Legislature possesses a wide discretion, there must, nevertheless, be some rational basis for the classification. * * *
Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. (Emphasis in original).
Discussing the protection against discrimination afforded under the equal protection clause, the U.S. Supreme Court, in Dandridge v. Williams, 397 U.S. 471, ___ (1970), stated:
 In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. * * * A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
The amendment to LB 717 does not specifically differentiate between banks and other financial institutions for purposes of determining qualification for the credit provided. Rather, according to your letter, the different treatment would occur due to the fact that, at the present time, nearly all banks would qualify for the 1 per cent credit, while other financial institutions would qualify for only the one-half per cent credit. The amendment does not, on its face, discriminate between banks and other financial institutions.
The crucial question presented is whether some rational basis can be conceived to validate the classification establishing the credit granted, which is based on the percentage of exempt securities held by an institution. Conceivably, a rational basis for the distinction can be asserted if the Legislature determined, as a matter of policy, the granting of a greater credit to institutions for carrying a higher percentage of exempt securities would encourage a greater level of investment in government obligations. In addition, it should be noted the classification established does not operate to create an impermissible closed class. Given the broad discretion granted the Legislature in matters of classification, we cannot conclude the amendment would be unconstitutional as creating an unreasonable or discriminatory classification.
Very truly yours,
ROBERT M. SPIRE Attorney General
L. Jay Bartel Assistant Attorney General