HENRY O. HALE et al., Appellants, v. IOWA STATE BOARD OF ASSESSMENT AND REVIEW, Appellee.

No. 43610.

JANUARY 19, 1937.

Alan Loth and William L. Hassett, for appellants.

Clair E. Hamilton, Special Asst. Attorney General, for appellee.

HAMILTON, J.—The facts are not in dispute and briefly stated are as follows:

During the month of January, 1936, plaintiffs, who were husband and wife, filed with the Iowa State Board of Assessment and Review a joint income tax return, in which they reported that they were engaged in no business but were farm owners and investors. They reported interest from all sources, including exempt interest in the sum of $1,322.69. In the report they state that in addition to the interest reported they held bonds during 1935 and received interest therefrom as follows:

|  | Principal | Interest |
| --- | --- | --- |
| State of Iowa, Soldiers Bonus bonds.. | $ 1,000.00 | $ 45.00 |
| Iowa School District bonds | 666,900.00 | 32,648.75 |
| Road Bonds of Iowa Counties | 82,000.00 | 4,072.50 |
| County Bonds | 3,000.00 | 127.50 |
| Totals | $752,900.00 | $36,893.75 |

Under the heading of "Income from rents and royalties" they report a deficit of $5,031.16. From this they deduct the $1,322.69 leaving a deficit or loss in taxable income of $3,708.47. They also report deductions for interest, taxes, contributions to charities, etc., of $3,120.50 or a net income deficit of $6,828.97. They decline to pay the tax on the $36,893.75 interest received from the municipal securities above listed, claiming that this in-

terest was received on tax exempt bonds, and that the Iowa Income Tax Act does not impose a tax on said items of interest, and that if it did it would as to the bonds issued prior to its passage be unconstitutional, and they accordingly refuse to pay any tax upon said items of interest. The Iowa State Board of Assessment and Review corrected said return by charging the plaintiffs with an additional income tax because of the interest received on said bonds, making the amount of the net income $30,064.78 (after allowing the deficit of $6,828.97 as disclosed by the plaintiffs' tax report), tax upon which would be $1,403.24, less personal exemption and credit for dependents of $16.00, leaving a total tax imposed as corrected of $1,384.24, and under date of February 8, 1936, gave the plaintiffs notice of assessment in accordance with the statute. In due time the plaintiffs made application for abatement of said tax and appealed for revision of the tax to the board, setting up in said application the same specifications as are contained in their petition in this action. There was a hearing before the board, affirming the tax as corrected and overruling the application of the plaintiffs for a revision and abatement of the tax. In due time and in accordance with the statutory provisions plaintiffs appealed from said order to the district court, and it is conceded that in all respects the statutory procedure has been complied with, both in imposing the tax and in raising the legal questions presented to this court.

Appellants emphasize very strongly in their argument that the interest received, being so received solely because of the incident of ownership of the bonds, could not be considered a gain or profit derived from any business or profession, and hence would not fall under the general classification of excise tax known and referred to as a tax on the privilege of transacting a business or occupation, and since the income was received solely as an incident to ownership and because of their ownership of said bonds, the appellants go one step farther and insist that this assessment was made solely because of the ownership of said bonds and therefore is a tax upon the bonds themselves.

We do not think it can be truthfully said that these plaintiffs were engaged in no business, in the broadest sense of that term. They list themselves as farm owners and investors. Their business therefore must be held to be that of looking after their farming interest and investing their capital. The extent of their farm business is only revealed by the deficit in income from rents

and royalties listed in their report as $5,031.16. This deficit no doubt is carried over from a separate farm income report, showing this deficit. Their ownership of other securities in addition to the municipal bonds, interest from which they claim is not taxable, is only shown by the amount of interest from all sources in the sum of $1,322.69. The fact that they had most of their wealth invested in tax-exempt securities in no way detracts from their status as investors of capital. They might be carrying on an investment business of several million dollars and own nothing but tax-exempt securities and still contend that they had no business. Their capital investments in these tax-exempt securities amounted to three quarters of a million dollars and they realized a gain or profit by way of interest on their investment of $36,893.75, and, while they were not engaged in the business of farming in the sense that they operated the farm or farms owned by them, but in the sense that the farms represented a part of their investments of their capital, labor, service and energy expended in an endeavor to make the farms pay or realize returns on such investment, they might well be said to be also engaged in the business of farming.

The case was ably presented by counsel representing the respective parties. The trial court took time to consider the facts and the law presented and rendered his decision in writing, which shows a careful analysis of the entire matter, and which we are incorporating at length in this opinion, and which reads as follows:

"The case presents the question whether the income from tax exempt securities is subject to the state income tax.

"Plaintiffs argue that the Income Tax Statutes do not authorize the tax sought to be enforced. It seems clear from a reading of the Income Tax law that it is the expressed intent of the Legislature that this income is taxable. Code Section 6943-f7 provides: 'The term "net income" means the gross income of the taxpayer less the deductions allowed by this division.' The following section defines 'gross income' as 'gains, profits and incomes derived * * * from interest, rent, dividends, securities, or * * * from any source whatever and in whatever form paid.' Par. 2 of the same section (6943-f8) contains an enumeration of the items exempt from the operation of the income tax, among which is: 'd. Interest upon the obligations of the United States

or its possessions, agencies, or instrumentalities, which is or shall be exempt from state taxation by federal law.' The statutory definition of income is clearly broad enough to include the income in question. The statute having exempted several items from the effect of the tax (including interest on obligations of the Federal government) it must be presumed that the legislature would have included interest from municipal bonds among the exemptions, if such had been its intent. As authority for this conclusion see, Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. Ed. 304, at page 306, 71 A. L. R. 1260, where the Supreme Court places an analogous interpretation on the Federal Act. And, also in point on this question is Appeal of Van Dyke, 217 Wis. 528, 259 N. W. 700, at page 704, 98 A. L. R. 1332.

"Does the operation of the tax on the income derived from the bonds involved in this case result in the impairment of any contractual obligation in violation of the State or Federal Constitutions?

"The conclusion above reached on the question of construction of the Income Tax Statutes leads to the result that as to the bonds issued after the Income Tax law went into effect (of the face value of $27,000) the interest therefrom is subject to the tax imposed by the defendant.

"All of the securities here involved, other than the $27,000 above referred to, were issued before the effective date of the Income Tax law. All the bonds were issued pursuant to statutory authority. The exemption statute applicable to most of the bonds is Code Section 6944, the first section in Chapter 330, which chapter is entitled: 'Property Exempt and Taxable.' The section reads: 'The following classes of property shall not be taxed: * * * 5. Public securities. Bonds or certificates issued by any municipality, school district, drainage or levee district, * * * or county within the state of Iowa. * * * 22. Soldiers bonus bonds.' Code section 6953 provides: 'What taxable. All other property, real or personal, is subject to taxation in the manner prescribed.' Part of the bonds in question were exempted also by Code Section 4753-a13, reading as follows: 'Bonds, and road certificates * * * shall not be taxed.' The exemption provided by Section 4753-a13 surely is no more broad than the exemption stated in Section 6944.

"Plaintiffs contend that the foregoing exemption constitutes a contractual obligation and that it is broad enough to exempt

not only the bonds but also the income derived from the bonds from the income tax. It will be assumed that the exemption is in the nature of a contractual obligation which cannot be impaired. Perhaps it could be contended with some force by the defendant that the exemption is not contractual but merely declaratory of a legislative policy which is not irrevocable. On this point, see Wisconsin & M. R. Co. v. Powers, 191 U. S. 379, 24 S. Ct. 107, 48 L. Ed. 229. The serious question is whether the statutory exemption of the bonds, conceding it to be contractual, is broad enough to include exemption of the income from the securities from the income tax. Defendant contends that the statutory exemption applies only to general property taxation and that the income tax is not a property tax but is an excise tax. It is undoubtedly the general rule that an exemption from property tax does not constitute an exemption from an excise tax. In order to sustain the tax in question it is not necessary fully to adopt the defendant's contentions. The tax is enforceable if the statutory exemption of the bonds is too narrow to exempt the income from the operation of the income tax. Although the matter is not wholly free from doubt, it seems fairly clear that the exemption is not so broad as plaintiffs contend and that the income tax is enforceable. Following are the principal reasons and some of the authorities to be given in support of this conclusion.

" 'Taxation is the rule and exemption the exception, and, therefore, strict construction of the statute [now Code Section 6944] under which the exemption is claimed is the rule.' City of Sioux City v. School District, 55 Iowa 150, at page 152, 7 N. W. 488, 489. 'Grants of immunity from taxation, in derogation of a sovereign power of the State, are strictly construed.' Pacific Co. v. Johnson, 285 U. S. 480, at page 491, 52 S. Ct. 424, 426, 76 L. Ed. 893. The authorities make it clear that the statutory exemption must be given a strict and somewhat narrow construction as distinguished from a liberal and broad construction. It is also clear that every presumption is indulged in favor of the constitutionality of the income tax statute; that it must be upheld unless its invalidity is manifest beyond a reasonable doubt. Code Section 6944 must, if fairly possible, be so construed as to save the constitutionality of the income tax law.

"The exemption statute itself—construed in the light of the foregoing rules—seems to be applicable only to property taxa-

tion. The wording of the section (6944) itself so indicates. And see Code Section 6953. The Iowa Court has so construed this same section in cases where it was sought to exempt public property from special assessments. Sioux City v. School District, 55 Iowa 150, 7 N. W. 488; E. & W. Construction Co. v. Jasper County, 117 Iowa 365, 90 N. W. 1006, 94 Am. St. Rep. 301. And in a case where it was sought to have exempted property owned by an alleged charitable institution from a business or license tax the same construction was placed on the same statute. Iowa Mut. Tornado Ins. Assn. v. Gilbertson, 129 Iowa 658, 106 N. W. 153. In State v. City of Des Moines, 221 Iowa 642, 266 N. W. 41, it is held that the same statute (exempting property of a city from taxation) does not exempt a city from paying the state gasoline tax on gasoline owned and used by the city, the court saying that the gasoline tax is not a property tax but an excise tax. This last decision is in line with numerous decisions from many different jurisdictions under strikingly similar statutory provisions. Some of the many authorities are cited in the City of Des Moines case.

"There is much respectable authority in other jurisdictions sustaining the view that a similar statutory exemption of municipal bonds from taxation refers only to general property taxes and not to such a tax as the income tax. Appeal of Van Dyke, 217 Wis. 528, 259 N. W. 700, 98 A. L. R. 1332, so holds. People v. Gilchrist, 262 U. S. 94, 43 S. Ct. 501, 67 L. Ed. 883, recognizes the doctrine for which defendant contends by affirming a decision of the New York Court of Appeals (People ex rel. Clyde v. Wendell, 232 N. Y. 550, 134 N. E. 567) in the following words (quoting from 262 U. S. 94, 43 S. Ct. 501, 503, 67 L. Ed. 883, at page 893):

" 'Considering that only the principal of mortgages was taxed when the law was passed, and that in those days no one thought of an income tax; *that any contract of exemption must be shown to have been indisputably within the intention of the legislature;* that it is difficult to believe that the legislature meant to barter away all its powers to meet future exigencies for the mere payment of a mortgage recording tax; and that a tax upon the individual, measured by net income might be regarded as one step removed from a tax on the capital from which the income was derived, (Wm. E. Peck & Co. v. Lowe, 247 U. S. 165, 175, 38 S. Ct. 432, 62 L. Ed. 1049) it [N. Y. Ct. of Appeals] held that

there was no promise that the present [income] tax should not be imposed.'

"The validity of state income tax statutes has most generally been called into question in the courts under constitutional provisions requiring that all property shall be taxed uniformly according to its true value. Apparently most of the states have constitutional provisions of this character. Although there are a few exceptions, it has most generally been held in most jurisdictions that such constitutional provisions apply only to property taxation; that income is not 'property' within the law of taxation; that an income tax is not a property tax but falls more nearly within the category of excise taxes. Some of the many authorities so holding are O'Connell v. Board, 95 Mont. 91, 25 Pac. (2d) 114; Diefendorf v. Gallet, 51 Idaho 619, 10 Pac. (2d) 307; Maxwell v. Mfg. Co., 204 N. C. 365, 168 S. E. 397, 90 A. L. R. 476; Bacon v. Ranson, 331 Mo. 985, 56 S. W. (2d) 786; State v. Nichols (N. D.) 265 N. W. 859.

"In Black on Income and Other Federal Taxes (3rd Ed.) §44 it is said:

" 'The term "property" as used in reference to taxation means the corpus of an estate or investment as distinguished from the annual gain or revenue from it.'

"It seems unnecessary to determine the question whether an income tax is, strictly speaking, an excise tax. The Iowa Income Tax Act, in terms, imposes a tax 'upon every resident of the state, which tax shall be levied, collected and paid annually upon and with respect to his entire taxable income, etc.' (Code, §6943-f5) Thus the tax in question purports to be upon the person. There is much authority for the proposition that an income tax is a tax upon the recipient of the income rather than upon the income as a thing. This seems to be the trend of the later decisions. An income tax cannot fairly be called a tax on property within the usual accepted sense of the term. Corpus Juris states that the weight of authority is that the income tax falls more nearly within the category of excise taxes. 61 C. J., 1560. A general income tax on income from all sources is generally recognized as an excise although it may include income from property. 26 Ruling Case Law, page 142. Among the many recent cases discussing at length the character of an income tax where the conclusion is reached that it is an excise, in addition to the cases last above cited, are Miles v. Department of Treasury

(Ind. Sup.), 193 N. E. 855, 97 A. L. R. 1474; and Featherstone v. Norman, 170 Ga. 370, 153 S. E. 58, 70 A. L. R. 449. The United States Supreme Court expressly says that an income tax is an excise in Brushaber v. Union Pacific R. Co., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713.

"That a general net income tax is an indirect, rather than a direct tax, is recognized in the oft repeated language of Justice Pitney speaking for the Supreme Court in U. S. Glue Company v. Town of Oak Creek, 247 U. S. 321, at page 328, 38 S. Ct. 499, 501, 62 L. Ed. 1135, Ann. Cas. 1918E, 748: 'The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental.'

"Plaintiffs cite as authority for their contention that the statutory exemption is broad enough to exempt the income from the bonds: Macallen Co. v. Massachusetts, 279 U. S. 620, 49 S. Ct. 432, 73 L. Ed. 874, 65 A. L. R. 866; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338; and some other like cases. Only the Macallen case is in point on its facts. Undoubtedly the Macallen case is the strongest authority for the plaintiffs. Three Justices dissent. The majority opinion reverses a unanimous decision of the Supreme Court of Massachusetts (264 Mass. 396, 163 N. E. 75), which state decision is in line with the argument of defendant in the case now before the court. There appear to be some distinctions between the Macallen case and the present case. In the first place, the Massachusetts statute creating the exemption that is involved in the Macallen case is headed '*Persons and* property exempt from taxation' and the statute reads: 'Sec. 5. The following property *and polls* shall be exempt from taxation.' G. L. Mass., c. 59, §5. Thus the statute under which the bonds in the Macallen case were claimed to be exempt undertook to exempt both persons and property. Furthermore, the Massachusetts statute does not purport to be a general income tax statute but applies solely to domestic business corporations. Then, too, under the Massachusetts act, as originally passed, income from tax exempt securities was exempted from the income tax. Subsequently, this exemp-

tion of such income was removed, resulting (so the Court felt) in discrimination against tax-exempt securities. See Pacific Co. v. Johnson, 285 U. S. 480, at page 494, 52 S. Ct. 424, 76 L. Ed. 893.

"It seems that the Macallen case is in effect overruled—certainly the weight of its authority is very much lessened, to say the least—by the more recent cases of Pacific Co. v. Johnson, 285 U. S. 480, 52 S. Ct. 424, 76 L. Ed. 893, and Educational Films Corp. v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226. In the Pacific Company case the arguments and briefs of counsel set out with the report of the decision are strikingly similar to the arguments and briefs presented by the attorneys in the case at bar. The Pacific Company case holds squarely that a tax may be levied against a corporation based upon the entire net income of the corporation including that from tax exempt municipal bonds. The majority of the Court (there were three dissenting Judges) cites the identical cases cited by the Massachusetts court in its opinion in the Macallen case (264 Mass. 396, 163 N. E. 75) and refuses to follow the majority opinion in the Macallen case. The majority opinion in the Pacific Company case seems to be a complete answer to plaintiffs' contentions in the present case. The other case, later in point of time than the Macallen case, Educational Films Corporation v. Ward, 282 U. S. 379, 51 S. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226, upholds a corporation franchise tax based on net income including income as royalties from copyrights granted by the United States (copyrights were exempt from taxation). Both the majority and dissenting opinions deal very largely with a discussion of the Macallen case. For a criticism on the Macallen case in which it is stated that it marks a new attitude toward excise taxes and that it makes the validity of the tax depend upon what the Court concludes the legislative intent to have been, see Note Vol. 30, Columbia Law Review, page 92 at 100. This view expressed in the Macallen case seems to be repudiated in the Pacific Company case.

"The next case in importance cited by plaintiffs is, Gillespie v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338. In Burnet v. Coronado Oil & Gas Company, 285 U. S. 393, at page 398, 52 S. Ct. 443, 444, 76 L. Ed. 815, the Supreme Court says: 'We are disposed to apply the doctrine of Gillespie v. Oklahoma

[257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338] strictly and only in circumstances closely analogous to those which it disclosed.'

"It is well settled that tax exempt federal, or other bonds are not exempt from state or federal inheritance tax. Plummer v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998; Blodgett v. Silberman, 277 U. S. 1, 48 S. Ct. 410, 72 L. Ed. 749; Greiner v. Lewellyn, 258 U. S. 384, 42 S. Ct. 324, 66 L. Ed. 676. In Peck & Co. v. Lowe, 247 U. S. 165, 38 S. Ct. 432, 433, 62 L. Ed. 1049, it is held that income from shipping goods to foreign countries and there selling them may be taxed, notwithstanding the constitutional provision that 'No tax or duty shall be laid on articles exported from any state.' In Flint v. Stone Tracy Company, 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, recognized as authority in the Macallen case and expressly reaffirmed in the later Pacific Company and Educational Films Corporation cases, it is held that an excise tax on corporations may include income from tax exempt securities. Earlier cases upholding state franchise taxes measured by net property or income including tax exempt bonds or their income are: Society v. Coite, 6 Wall. 594, 18 L. Ed. 897; Provident Institute v. Massachusetts, 6 Wall. 611, 18 L. Ed. 907, 913; and Home Ins. Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 33 L. Ed. 1025. In U. S. Glue Co. v. Town of Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748, it is held that a state income tax is valid even though it includes net income derived from transactions in interstate commerce where there is no discrimination against such income.

"For the foregoing reasons it is accordingly by the Court Ordered, Adjudged and Decreed that the assessment herein appealed from is hereby affirmed and upheld and the plaintiffs' appeal therefrom is hereby dismissed and the additional assessment against the plaintiffs, Henry O. Hale and Elizabeth C. Hale, in the sum of $1,387.24, hereby stands affirmed. Costs of this case are to be taxed by the Clerk to said plaintiffs."

There is little that could be added to the foregoing carefully prepared opinion of the able trial court. We have carefully examined the authorities cited and read the able arguments of counsel for appellants. We understand their position but are unable to subscribe to the proposition that a general income tax law imposed upon the entire income is a property tax. This

court held in the case of City of Dubuque v. Northwestern Life Ins. Co., 29 Iowa, page 9, decided in 1870 that gross income was not property within the meaning of the law authorizing the city to collect taxes upon "taxable property". The court said:

"It certainly cannot be claimed that the gross income of individuals or corporations from any business in which they may be engaged, for a specified period without regard to the money or property realized and on hand at the expiration of the time, can be properly described by the term property. No one will pretend that the sum shown as the footing of the debit side of the merchant's cash book, during a year's business, can be called property. The money represented by each item of the account when in his possession was property, but the aggregate of the whole amount of money passing through his hands for a year could not, at the end of that time, when he possessed a small portion of it, be called his property."

Neither can we subscribe to the appellants' contention that the law exempting the bonds themselves from taxation likewise exempts the interest, or that the inclusion of the income or interest from the bonds in the total of the gross income of the individual under the income tax law is a tax upon the bonds themselves. It is only fair to assume that the legislature at the time of the enactment or re-enactment of the tax exemption statutes relied upon by appellants was advised of the prior holdings of this court to the effect that the tax exemption laws in this state had been construed by this court as having reference to general property taxes only, and would have therefore specifically broadened the tax exemption provisions subsequently enacted to include taxes other than general property tax, if such was the intention of the legislature. Not having done so, we are not, under the rule of strict construction applied to tax exemption laws, permitted to enlarge the meaning which the legislature undoubtedly must have intended, and to extend the tax exemption statute to include the interest as well as the bonds themselves. Since the total of a person's entire income over the taxing period is not considered property, as that term is used in the statutes relating to the imposition of taxes upon property, real and personal, and since the tax exemption statutes have reference to a general property tax, which is the construction this court has always placed upon such statutes and of which we

must assume the legislature took cognizance, it necessarily follows that the contractual immunity from taxation applicable to the bonds themselves was not intended by the legislature to be extended to include the interest on the bonds or to include a tax other than a general property tax. Neither can we agree with counsel that the tax was imposed "solely because of the ownership of said bonds." There is much more than mere ownership involved in looking after an investment of three quarters of a million dollars, collecting and reinvesting some $36,000 interest thereon annually. In addition to this they had other securities as well as their farming interests. It required labor, thought, energy, all of which is included with title and ownership in husbanding the large fortune, measured by the holding of the average family, which appellants had accumulated under the beneficent laws and protecting care of their government.

The decree of the trial court is therefore affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, PARSONS, STIGER, and DONEGAN, JJ., concur.

MITCHELL, J., takes no part.