HOWARD V. MARTIN et al., Appellants, v. STATE BOARD OF ASSESSMENT AND REVIEW, Appellee.

No. 44284.

JANUARY 10, 1939.

Gill & Gill, for appellants.

John H. Mitchell, Attorney General, and Clair E. Hamilton, for appellee.

MILLER, J.—The facts are not in dispute. Most of them were stipulated by the parties. There are six appellants. The causes were consolidated by stipulation of the parties and order of court entered pursuant thereto.

In 1933, all six of the appellants were owners of certain shares of capital stock issued by the T. S. Martin Company and three of appellants were the owners of shares of stock issued by the T. S. Martin Realty Company. The stock issued by the T. S. Martin Realty Company was all common stock. Part of the stock issued by the T. S. Martin Company was common stock and part of it was preferred stock.

On December 28, 1933, the board of directors of the T. S. Martin Realty Company declared a dividend to all stockholders of record as of December 31, 1933, to be paid on January 29, 1934. On March 1, 1934, the board of directors of the T. S. Martin Company declared a dividend from the profits earned by said company during their fiscal year ending January 31, 1934. The dividends, declared as aforesaid, were paid in 1934 in cash.

The articles of incorporation provided for the payment of dividends on the preferred stock held by appellants. The dividends thus provided in 1933 were passed during that year and were declared and paid in cash in 1934.

It was stipulated and agreed by the parties that all of the dividends, paid in 1934 as aforesaid, were paid from the earnings, accumulated by the corporations prior to January 1, 1934. When appellants made their respective income tax returns for the calendar year 1934, the dividends, declared and paid as aforesaid, were not reported, and no income tax was paid by reason of the receipt of such dividends. Appellants

made their federal income tax returns for the years 1933 and 1934, and the Iowa income tax return for the calendar year 1934 on a cash receipt and disbursement basis.

In August, 1936, appellants were notified that defendant charged each of them an additional assessment for individual income tax, based on the dividends declared and paid as aforesaid. In addition to these items, the appellant, Howard V. Martin, was assessed an additional income tax, based upon certain transactions involving the sale of stocks and grain, and the appellant, J. Earle Martin, was denied certain deductions for interest and taxes paid by him in 1934. The facts relating to these latter issues are hereinafter discussed.

In September 1936, appellants filed objections with the defendant to the additional income tax assessed against them. Hearing was had before the defendant board of review in October, 1936, and the matter taken under advisement until May 1937, when defendant board sustained the additional tax assessed against each of appellants. The appellants paid the additional taxes under protest and appeal was taken to the district court. At the trial it was also stipulated that, if appellants are taxable by virtue of the items of income involved in this controversy, they are taxable at the rates determined by the board. It was also stipulated that, in the event the court should find that any item of additional taxes assessed was illegal and not subject to such tax within the provisions of the Iowa statute, then the court should enter an order and decree for the return or refund of any such tax to the taxpayer and enter judgment and decree for the taxpayer for the amount of any and all taxes illegally assessed against such taxpayer. After the trial was had, decree was entered denying appellants relief from the assessments above described. From said decree, appeal was taken to this court.

On the issue, presented by that part of the appeal which challenges the validity of the income tax assessments which are based upon the receipt of dividends declared and paid as aforesaid, it is the contention of appellants that all of the dividends accrued to them prior to January 1, 1934, the effective date of the Iowa income tax law, and, having accrued prior to that date, the same constituted personal property in the hands of appellants and could not be considered income. Appellants contend that the income tax is not a tax on property and that,

1322

to affirm the decree herein, would in effect assess a tax on personal property. Appellants concede, however, that, had the income tax law been in effect in 1933, the dividends would have been proper basis for the assessment of an income tax. We find no merit in the position taken by appellants.

This court has expressly held that a general income tax, imposed upon the entire income of the taxpayer, is not a property tax. Hale v. State Board of Assessment & Review, 223 Iowa 321, 271 N. W. 168. This court there affirmed its former holding in the case of City of Dubuque v. N. W. Life Ins. Co. 29 Iowa 9, that the aggregate of the whole amount of money passing through the hands of the taxpayer for a year could not, at the end of that time when he is possessed of a small portion of it, be called his property. This court also adopted the following statement, made by the trial court in that case, to wit [p. 328 of 223 Iowa, p. 172 of 271 N. W.] : "There is much authority for the proposition that an income tax is a tax upon the recipient of the income rather than upon the income as a thing."

A case which expressly so holds is that of State v. Wis. Tax Comm., 166 Wis. 287, 163 N. W. 639, 165 N. W. 470, wherein the court states as follows: ·

"Much confusion of thought arises from regarding the income tax as a tax that is levied upon or attaches to property as such, irrespective of the person sought to be taxed. It is the recipient of the income that is taxed, not his property; and the vital question in each case is, Has the person sought to be taxed received an income during the tax year? If so, such income, unless specifically exempted, is subject to a tax though the property out of which it is paid may have been exempt from an income tax in the hands of the payor. It is the relation that exists between the person sought to be taxed and specific property claimed as income to him that determines whether there shall be a tax."

An income tax is assessed against the taxpayer. In determining the amount of tax, it is necessary to ascertain whether or not the taxpayer received an income during the tax year, and if he did, the amount of the income, subject to tax, constitutes the basis for the tax. This is clearly the theory of the Iowa income tax law.

Section 6943-f5 of the Code provides that a tax is imposed, beginning the first day of January 1934, upon every resident of this state, which tax shall be levied, collected and paid annually with respect to his entire taxable income as determined by the statute. Section 6943-f7 defines "net income" as the gross income of the taxpayer less the deductions allowed by statute. Section 6943-f8 defines "gross income" as including, among other things, gains, profits and incomes derived from interest, dividends or from any source whatsoever and in whatever form paid, and that the amount of all such items shall be included in the gross income of the tax year in which *received* by the taxpayer unless, under the methods of accounting permitted by statute, any such amounts are to be properly accounted for as of a different period. Paragraph 2 of said section 6943-f8 specifies certain items which are exempt from the term "gross income". None of the items there specified correspond to the items herein involved. Section 6943-f9 provides for the deductions permitted by statute. None of the items there specified correspond to the items involved herein.

By reason of the foregoing, it is clearly apparent that, in determining the items which form the basis for a taxpayer's liability under the Iowa income tax law for the tax year of 1934, it is necessary to determine what income was "received" by the taxpayer during that tax year. Paragraph 7 of section 6943-f4 defines the term "received", for the purpose of the computation of net income under the statute, as meaning "received or accrued", and the term "received or accrued" shall be construed according to the method of accounting, upon the basis of which the net income is computed under the statute. Section 6943-f16 provides that taxpayers who customarily determine their income on a basis other than that of actual cash receipts and disbursements may, with the approval of the board, return their net income upon a similar basis.

As above pointed out, it was stipulated that each appellant made his Iowa income tax return for the calendar year 1934 on a cash receipt and disbursement basis. Having so prepared their returns, appellants are in no position to contend otherwise than that the taxable income of each, for the calendar year 1934, is to be determined from the actual cash receipts and disbursements made by each during such calendar year.

It is stipulated that the dividends involved herein were

paid to each of appellants in cash during the calendar year 1934. Obviously, such dividends were received during such calendar year. Having been so received, they constituted items which should have been included in the income tax returns submitted by appellants for the calendar year 1934.

Much of the argument of counsel for appellants is to the effect that the dividends, involved herein, all accrued to appellants during 1933, upon a theory that they became binding obligations of the corporations, which appellants could enforce. There is respectable authority to the effect that such dividends did not even accrue to appellants until paid to them. In the case of Skinner v. Union Pac. Coal Co., 252 U. S. 570, 40 S. Ct. 392, 64 L. Ed. 721, the Supreme Court of the United States affirmed a decision of the Circuit Court of Appeals, Eighth Circuit, reported at 249 Fed. 152, wherein the Circuit Court states [p. 153]:

"We think annual dividends, paid out of the profits of the business of a corporation declaring the same, do not accrue to a stockholder until they are declared and paid by the paying corporation. Until that is done they represent mere profits of the corporation earning the same, and that corporation may, in the exercise of a proper discretion, apply the same as it sees fit. The stockholder does not acquire any interest in the fund until the dividend is paid."

It is not necessary here, however, for us to determine when the dividends accrued to appellants. The determining fact is when they were received by appellants. On this question, the Supreme Court of the United States in the case of Avery v. Comr. of Internal Revenue, 292 U. S. 210, 54 S. Ct. 674, 78 L. Ed. 1216, decided in 1934, states [p. 676]:

"If we give the words of the statutes their ordinary meaning, clearly the dividends under consideration were not actually received by the taxpayer during 1924 and 1929. Certainly they were not received when declared. They did not come into the taxpayer's hands on December 31st simply because payable on that day. And, unless Congress has definitely indicated an intention that the words should be construed otherwise, we must apply them according to their usual acceptation."

Under the record made herein, we hold that the dividends,

involved under the record presented by appellants, were received by appellants during the calendar year 1934.

We are also of the opinion that the fact, that the dividends which appellants received in 1934 were all paid from the earnings of the corporations, accumulated prior to January 1, 1934, is wholly immaterial. Counsel for appellants state that there is a conflict in the authorities on this question and seek to explain the conflict by the difference in the wording of the various statutes. Be this as it may, the Wisconsin statute appears to be identical with the Iowa statute, insofar as this question is concerned. In the case of Van Dyke v. City of Milwaukee, 159 Wis. 460, 146 N. W. 812, 150 N. W. 509, the Wisconsin court was called upon to answer the question, whether or not dividends declared and distributed during 1911 out of earnings accumulated prior to January 1, 1911, when the Wisconsin income tax law went into effect, were taxable as income for the year 1911. The Wisconsin court there states as follows:

"An affirmative answer must be given to this question, because the statute provides that 'there shall be assessed, levied, collected and paid a tax upon incomes received during the year ending December 31, 1911'. The plaintiff received this income during 1911. It was immaterial when it was earned by the corporation. As a stockholder he acquired no right to it until it was distributed in the form of a dividend. The profits of a corporation become income to stockholders when distributed as dividends, but not before. Miller v. Payne, 150 Wis. 354, 136 N. W. 811; In re Will of Pabst, 146 Wis. 330, 131 N. W. 739; Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525; Hyatt v. Allen, 56 N. Y. 553, 15 Am. Rep. 449; Minot v. Paine, 99 Mass. 101, 96 Am. Dec. 705."

Other authorities could be cited to support our conclusion herein. In view of the clarity of the provisions of the Iowa income tax law and the undisputed facts presented by the record herein, further discussion of the authorities would unnecessarily prolong this opinion. We, therefore, hold that the trial court was right in affirming the action of the defendant board, sustaining the additional income tax assessed against appellants based upon dividends on both common and preferred stock, received by appellants during the calendar year 1934.

On the issue, presented by the appeal of Howard V.

Martin, challenging additional income tax assessed against him by reason of certain transactions involving the sale of stocks and grain, it would appear that the decree of the trial court is erroneous.

At the trial, stipulation was made of the undisputed facts constituting the items and facts, as to each of appellants, on which the assessment for an additional individual income tax for the year 1934 was based. As to appellant Martin, this stipulation included the statement that "Howard V. Martin was charged with the following assessment for individual income tax for the year 1934: * * * on $1,633.53 of profit arising from the sale of capital assets—$81.68." It was also stipulated that the item of $1,633.53 was shown by an itemized statement, set out as Exhibit 3, which shows the blocks of stock and jobs of grain purchased by Howard V. Martin, along with the date of purchase, the date sold, the cost of said stock or grain to him, and the amount received on the sale, together with the gain or loss. The exhibit does not show the amount deposited as part of the purchase price, but it was stipulated that, at the time of the purchase of the different blocks of stock, as shown in said Exhibit 3, approximately 50 per cent of the purchase price was paid to James E. Bennett & Company, and that on the three items of grain, as shown in said exhibit, the purchase price was $23,600, while the amount deposited on the purchase price was $1,900. It was further stipulated that none of the grain was delivered to Martin at the time he signed the order and made the deposit or at any time thereafter. The record is silent as to the delivery of the stock.

Subparagraph 2a of section 6943-f8 provides that the term "gross income" does not include capital gains and profits arising from the sale or exchange of real or personal property of the taxpayer, which items shall be exempt from taxation under the statute. It is the claim of appellant, Martin, that the net gain from the purchase and sale of the stock and grain, itemized in Exhibit 3, represents a capital gain arising from the sale or exchange of personal property of the taxpayer, and, therefore, is not subject to an income tax.

Appellee seeks to justify the tax on two theories. One is that the stock and grain so purchased and sold was stock in trade and not capital investment. The other is that appellant Martin had no intention to accept delivery of the property and

that the purported sales were void as gaming transactions. The record does not support the claims of appellee.

Aforesaid Exhibit 3 shows considerable lapse of time between the purchase and sale of the stock and grain in most instances. Sometimes as much as ten months intervene. In one instance, only one week intervened; in another instance about two months intervened. The exhibit contains some items which indicate support for appellee's theory. Other items are directly contrary to appellee's theory and would certainly indicate an intention to make a capital investment. With the record in such condition, coupled with the stipulation of the parties that the "$1,633.53 of profit arose from the sale of the capital assets", we are of the opinion that the record supports the claim of appellant rather than that of appellee on the issue of investment in capital assets rather than stock in trade.

On the issue, whether or not appellant, Martin, intended to accept delivery of the stock or grain, the only evidence, in addition to that above reviewed, appears in Exhibit 2, which was stipulated as being a correct copy of appellant Martin's protest to defendant board, dated September 26, 1936. This exhibit is a lengthy letter, in the course of which reference is made to the item of $1,633.53 from transactions with James E. Bennett & Company "on what is commonly known as the 'marginal' basis, and which term needs no explanation nor requires any comment". This statement is followed by the assertion "this gain is a capital gain arising from the sale of personal property." Further statements are included in support of this latter assertion, which it is not necessary to set forth here.

Of course, if appellant, Martin, at the time of giving his orders to James E. Bennett & Company, neither intended nor contemplated the actual delivery of the stock or grain, but intended that the profit or loss should be settled or adjusted on the market quotations of the board of trade, the contracts would be contrary to our statutes and void as gaming transactions. Lamson Bros. & Co. v. Mensen, 187 Iowa 972, 174 N. W. 688. Many other authorities could be cited on this proposition.

However, illegality is not presumed. The presumption is just the reverse. On the record made herein, as above reviewed, we do not find sufficient evidence to justify the conclusion that the transactions of appellant, Martin, in reference to the purchase and sale of stock and grain, were illegal. We accordingly

hold that said appellant was entitled to refund of the additional tax assessed against him in the sum of $81.68, together with such interest and penalties as may have been added to this single item.

On the issue, presented by the claim of appellant, J. Earle Martin, for certain deductions because of interest and taxes paid by him in 1934, examination of the decree of the trial court reveals that said claims were allowed by the trial court to the appellant, J. Earle Martin. We see no occasion to discuss said items further.

The decree of the trial court is reversed as to the item of $81.68 assessed against appellant, Howard V. Martin, for profits arising from the sale of capital assets, together with interest and penalties added to this individual item. In all other respects, the decree is affirmed.—Reversed in part, affirmed in part.

MITCHELL, C. J., and STIGER, HAMILTON, HALE, SAGER, and BLISS, JJ., concur.