## Stoudt et al. v. City of Philadelphia et al.

*Harry A. Demar* and *Earl W. Thompson*, for complainants.

*James F. Shrader, H. Merle Mulloy, Alfred W. Hesse, Jr., Robert V. Massey, Jr.; Abraham L. Shapiro* and *Abraham Wernick*, assistant city solicitors, and *Francis F. Burch*, city solicitor, for defendants.

OLIVER, P. J., March 19, 1940.—In their amended bill of complaint filed on behalf of the railroad employes, residents and nonresidents of the City of Philadelphia, who are employed by the three defendant railroad companies in interstate commerce within and without that city, plaintiffs attack the validity and seek to restrain the enforcement of the ordinance passed by the City Council of Philadelphia and affirmed by the acting mayor on December 13, 1939, imposing a tax for general revenue purposes on, among other items, earned income, salaries, wages, commissions, and other compensation earned after January 1, 1940, by residents of Philadelphia, and salaries, wages, commissions, and other compensation earned

after January 1, 1940, by nonresidents of Philadelphia, for work done or services performed or rendered in that city.

A stipulation of counsel filed of record withdraws without prejudice all averments of the amended bill attacking the regulations issued by the receiver of taxes under authority given in section 6 of the ordinance. It also establishes that plaintiffs have existing contracts with each of the railroad companies named as defendants, which set forth the rates of pay, rules, and working conditions of plaintiffs, and that such contracts were entered into in compliance with the Railway Labor Act of May 20, 1926, 44 Stat. at L. 577, as amended by the Act of June 21, 1934, 48 Stat. at L. 1185.

No questions of fact are in dispute. The matter was heard on preliminary objections to the amended bill as upon final hearing on the bill and stipulation of counsel.

The parties concede that, except for plaintiffs' contentions that the ordinance violates the commerce clause and the contract clause of the Federal Constitution and the provisions of the Railway Labor Act, all objections to the validity of the ordinance raised in the amended bill have been adjudicated by the decision of the Supreme Court of Pennsylvania handed down February 5, 1940, in the case of Dole v. Philadelphia et al., 337 Pa. 375. We have before us, therefore, only plaintiffs' above-mentioned contentions, which have not heretofore been passed upon.

It is urged that the ordinance places a burden on, and amounts to a regulation of, commerce among the several States in violation of article I, sec. 8, clause 3, of the Constitution of the United States, which in effect reserves to Congress the power to regulate such commerce.

In the recently decided case of McGoldrick, etc., v. Berwind-White Coal Mining Co., 309 U. S. 33, 45, Mr. Justice Stone reviews in the following language the general rules which determine whether a tax is or is not a regulation which, in the absence of congressional action, the commerce clause forbids:

"In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which impairs the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. . . . Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon commerce between the states.

"But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business. . . . Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress."

After setting forth examples of permissible local taxation, including a tax "on net income wholly derived from interstate commerce" and "non-discriminatory taxation of the instrumentalities of interstate commerce", Mr. Justice Stone states (p. 48):

"In few of these cases could it be said with assurance that the local tax does not in some measure affect the commerce or increase the cost of doing it. But in them as in other instances of constitutional interpretation so as to insure the harmonious operation of powers reserved to the states with those conferred upon the national government, courts are called upon to reconcile competing constitutional demands, that commerce between the states

shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed. . . .

"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey. Each imposes a burden which intrastate commerce does not bear, and merely because interstate commerce is being done places it at a disadvantage in comparison with intrastate business or property in circumstances such that if the asserted power to tax were sustained, the states would be left free to exert it to the detriment of the national commerce."

Referring to the general sales tax imposed by the City of New York on transactions consummated within its limits, Mr. Justice Stone then makes the following comments which can, with equal force, be applied to the tax imposed by the Philadelphia ordinance now before us (p. 48):

"The present tax as applied to respondent is without the possibility of such consequences. . . .

"If, as guides to decision, we look to the purpose of the commerce clause to protect interstate commerce from discriminatory or destructive state action, and at the same time to the purpose of the state taxing power under which interstate commerce admittedly must bear its fair share of state tax burdens, and to the necessity of judicial reconciliation of these competing demands, we can find no adequate ground for saying that the present tax is a regulation which, in the absence of Congressional action the commerce clause forbids."

In one of the cases cited by Mr. Justice Stone, United States Glue Co. v. Town of Oak Creek, 247 U. S. 321, 62 L. ed. 1135, the court had before it a Wisconsin tax on all incomes of corporations and individuals. Plaintiff corporation received a considerable part of its net income from interstate commerce and contended that the imposition of the tax upon such net income was in contravention of the commerce clause of the Federal Constitution. On that question, the opinion of the court, delivered by Mr. Justice Pitney, held (p. 326) :

"It is settled that a State may not directly burden interstate commerce, either by taxation or otherwise. But a tax that only indirectly affects the profits or returns from such commerce is not within the rule. . . .

"The correct line of distinction is so well illustrated in two cases decided at the present term that we need hardly go further. . . .

"The difference in effect between a tax measured by gross receipts and one measured by net income . . . is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental. A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise. Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce. A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large. Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of

the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States.

"And so we hold that the Wisconsin income tax law, as applied to the plaintiff in the case before us, can not be deemed to be so direct a burden upon plaintiff's interstate business as to amount to an unconstitutional interference with or regulation of commerce among the States. It was measured not by the gross receipts, but by the net proceeds from this part of plaintiff's business, along with a like imposition upon its income derived from other sources, and in the same way that other corporations doing business within the State are taxed upon that proportion of their income derived from business transacted and property located within the State, whatever the nature of their business."

A tax on the salary or wage which an employe receives for services rendered in interstate commerce is not a tax on the commerce but on the return for his work realized by the individual. In the ordinary course, when an employe receives his salary or other compensation, he has performed his service, his part in the interstate transaction is at an end and the tax is upon what he has earned therefrom for his personal use and enjoyment. Such compensation to the employe is comparable in that respect to the net profits realized by the employer. Each represents what is available for the uses of the employe or employer respectively, after completion of the interstate commerce and in each case such return is taxable as property belonging to the recipient. Furthermore, the tax in the present case is not imposed on the corporation, firm, or individual engaged in carrying on interstate commerce for the purpose of making a profit therefrom, but only upon certain employes of such business venturers. For both of these reasons it is inconceivable that the tax now before us could have the effect of im-

peding or discouraging the conduct of interstate commerce. Necessarily, as in the case before us, it must be fair, and no greater than the tax on salaries and wages earned in intrastate business, or it would be invalid because discriminatory.

It has been urged that the imposition on railroad companies of the duty to deduct and remit the tax is in itself a violation of the commerce clause as imposing a burden on companies engaged in interstate commerce. However, even if an incidental burden is so imposed on the railroad companies, they alone could raise the question and not these plaintiffs: Turco Paint & Varnish Co. v. Kalodner et al., 320 Pa. 421. But meeting this issue as though it had properly been raised, we hold that the imposition of the duty of collecting the tax at the source, on one engaged in interstate commerce, is not a violation of the commerce clause.

In a case where the tax was imposed on the purchasers of gasoline, with the duty on the seller to collect the tax and remit to the State, and it was contended by the seller that he was required to report and pay a tax on shipments made from outside of the State directly to his customers within the State and that, therefore, as to such shipments the burden on interstate commerce is obvious, the Supreme Court of the United States held that, the transaction of purchase being taxable and the statute not being directly intended to reach transactions in interstate commerce, the imposition on the seller of the burden of collection in such a case is not a violation of the commerce clause: Monamotor Oil Co. v. Johnson, etc., et al., 292 U. S. 86, 95, 78 L. ed. 1141. See also also Felt & Tarrant Mfg. Co. v. Gallagher et al., 306 U. S. 62, 83 L. ed. 488, 59 S. Ct. 376. Both these cases were cited with approval in McGoldrick, etc., v. Berwind-White Coal Mining Co., supra.

In Travis, etc., v. Yale & Towne Mfg. Co., 252 U. S. 60, 76, the employer, a foreign corporation, organized under the laws of the State of Connecticut, brought suit

against the State of New York contending, in part, that the imposition on it of the burden of adjusting its system of accounting and paying salaries and wages, in order to fulfill its duty to deduct and withhold the tax, was an unreasonable regulation of its business in New York and therefore a violation of the Federal Constitution. That argument was dismissed by the Supreme Court in an opinion by Mr. Justice Pitney in which he said, in part:

"Nor has complainant on its own account any just ground of complaint by reason of being required to adjust its system of accounting and paying salaries and wages to the extent required to fulfill the duty of deducting and withholding the tax. This cannot be deemed an unreasonable regulation of its conduct of business in New York."

Therefore, we conclude that the tax imposed by this ordinance, when applied to the salaries and wages of employes of railroads who are engaged in interstate commerce, is not a burden on such commerce and not an interference with or regulation of such commerce. This is a general tax imposed on all residents, and on all non-residents who earn salaries and wages within the limits of the City of Philadelphia. If it imposes any burden at all on interstate commerce, such burden is incidental. As it is also nondiscriminatory, it does not violate the Federal Constitution.

It was also contended that the imposition of a tax by the City of Philadelphia on the salaries earned by non-residents for services rendered within the city is unconstitutional, because such imposition may result in duplicate taxation since, in addition to the tax imposed in the community in which the taxpayer rendered the services, a similar tax may be imposed in the community in which he resides.

In Butcher v. Philadelphia et al., 333 Pa. 497, the ordinance there under attack imposed a tax on non-residents based on their activities within the City of Philadelphia in exactly the same manner as the ordi-

nance here under consideration. Despite such an attack on the constitutionality of the ordinance, the Supreme Court sustained its validity, except for certain exemptions. In Dole v. Philadelphia et al., supra, one of the grounds of attack upon the ordinance now before us was that the City of Philadelphia had no power to impose a tax on nonresidents for activities within the city. Although this ground of attack was not specifically mentioned in the opinion, the matter was directly in issue and the ordinance was held to be a constitutional exercise of the power of council. It follows that the disposition of these cases, by sustaining the constitutionality of the ordinances, operates to make the matter res judicata.

But even if the decisions in Butcher v. Philadelphia et al., supra, and Dole v. Philadelphia et al., supra, did not foreclose argument on that subject, the complaint made is without foundation. In Shaffer v. Howard, etc., et al., 250 Fed. 873, the State of Oklahoma imposed an income tax on, inter alia, the income of nonresidents received from Oklahoma oil wells. It was argued that, since the income was received from management and the management service was performed from a point outside of the State by a nonresident, the State had no power to impose a tax. In dismissing this objection, the Federal court said (p. 875) :

"That income taxation is a separate and distinct *form* of exercising the sovereign power of taxation is evident. . . . Certain classes of taxation have adherents who urge certain consideration, based upon their ideas of just and practical results in taxation. One such class is income taxes, and its sponsors urge its employment on the theory that it places the burden of government upon those most able to bear it. . . . The right to tax an income rests upon the protection or benefit given that income by the state. . . . .

"It does not necessarily follow from this definition that the plaintiff is subject to income tax only in the state of his residence. It means, rather, that he is subject to

income taxation only in those jurisdictions which protect him in the production, creation, receipt, and enjoyment of his income. If he lives in Illinois, and has in Oklahoma the property or the business from which his income flows, does not the latter state truly protect him in the privilege of producing, creating, receiving, and enjoying that income when it permits and protects his business from which the income flows? How is that affected by his residence? Both the property in Oklahoma and the intelligence in Illinois contributed to this income. Each was necessary to the result. . . . Can either state be told it cannot be compensated for its protection of a necessary component element of this income, or that it cannot measure such compensation by that income? If, through accident or design, an individual dwells in one state, while his business is in part or wholly located in other states, so that he needs, commands, and receives the protection of several states, can his income therefrom escape imposition? It may be true that the state which protects the person of the one who creates, receives, or enjoys an income may require of him therefor a tax measured by his ability to pay from his entire income. That is no reason why the state which protects the business which contributes to his income may not also demand, as pay for that protection, a tax measured by that part of his income which came from that business. If in the one case the state of residence can tax the right to create, receive, and enjoy an income, why cannot another state tax his right to create and receive an income from business within its borders?

"A tax upon an income of the instant character (from a business) is directed at neither the person who receives nor the property from which the income arises, but at the privilege of making, producing, creating, receiving, and enjoying the income itself. The right to lay such tax depends upon the protection of the person who receives or of the business which helps create that income."

This case was appealed to the United States Supreme Court and was dismissed, 249 U. S. 200, 63 L. ed. 559, for want of proper parties. Subsequently, another suit was instituted naming the new tax commission as defendants, and the same tax was held valid. See Shaffer v. Carter, etc., et al., 252 U. S. 37.

The case of Curry, etc., et al. v. McCanless, etc., 307 U. S. 357, 368, 83 L. ed. 1339, 1348, holds: ". . . income may be taxed both by the state where it is earned and by the state of the recipient's domicile."

In New York ex rel. v. Graves et al., 300 U. S. 308, 81 L. ed. 666, 108 A. L. R. 721, an income tax was laid on nonresidents measured by the amount of income received within the State of New York by such residents from their activities within the State. This tax was held not to violate the due process clause of the Federal Constitution despite the fact that it was argued in that case that the income tax laid by the State of New York included income from bonds secured by New Jersey mortgages. The Supreme Court, speaking through Justice Stone, said (p. 313):

"A tax measured by the net income of residents is an equitable method of distributing the burdens of government . . . [It] is founded upon the protection afforded by the state to the recipient of the income in his person, in his right to receive the income and in his enjoyment of it when received. These are rights and privileges which attach to domicil within the state. . . .

"Neither the privilege nor the burden is affected by the character of the source from which the income is derived. For that reason income is not necessarily clothed with the tax immunity enjoyed by its source. A state may tax its residents upon net income from a business whose physical assets, located wholly without the state, are beyond its taxing power . . .".

The opinion then points out that nothing in the due process clause throws around the taxpayer a protection against taxing his income received from property, even

though the State does not protect the property; and then says (p. 314):

"The imposition of these different taxes, by the same or different states, upon these distinct and separable taxable interests, is not subject to the objection of double taxation . . .".

All these cases, whether they involved the complaints of residents against the taxation of income received from sources outside of the State in which the tax was laid, or whether they involved complaints of nonresidents against the imposition of a tax by the State in which they earned their compensation, are in accord with the rule laid down in Shaffer v. Howard, etc., et al., supra, that, because of the protection which it affords its residents, a State may tax their income from whatever source it is received, and that, because of the protection furnished nonresidents who earn income within its borders, it may tax such nonresidents to the extent of their income received within the borders of the State.

We come now to the objection that the ordinance is invalid because it impairs the obligation of the contracts between the employers and the railroad companies, and thereby violates article I, sec. 10, of the Federal Constitution and sections 2 and 6 of the Railway Labor Act, supra.

Since the tax here complained of is a tax on the employe (see Dole v. Philadelphia et al., supra), it is obvious that what each railroad company is doing under the compulsion of the ordinance is to pay an obligation of the employe to the city. Therefore, in so doing, it is not violating either the employe's contract or the Railway Labor Act.

That the city had the right to make the employer the deducting agent has already been established by the decisions in Blauners, Inc., et al. v. Philadelphia et al., 330 Pa. 340, 348, Monamotor Oil Co. v. Johnson, etc., et al., supra, and Pierce Oil Corp. v. Hopkins, etc., et al., 264 U. S. 137. That the tax is on the employe is shown by

reference to Travis, etc., v. Yale & Towne Mfg. Co., supra, and by Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 239, 33 L. ed. 892, 895. That the deduction of the tax and the payment thereof to the city is not an impairment of contract is shown by reference to General Const. Co. v. Fisher et al., 149 Ore. 84, 39 Pac. (2d) 358, 97 A. L. R. 1252, appeal dismissed 295 U. S. 715, Hale et al. v. Iowa State Board of Assessment & Review, 223 Iowa 321, 271 N. W. 168, and Pacific Co., Ltd., v. Johnson, etc., 285 U. S. 480, 76 L. ed. 893.

All contracts are made in contemplation of the right of the State to impose a tax thereon. In State ex rel. v. Tax Commission, 221 Wis. 225, 265 N. W. 672, 104 A. L. R. 1478, the Supreme Court of Wisconsin, referring to a statement in Travis, etc., v. Yale & Towne Mfg. Co., supra, said (p. 234) :

"This implies that the obligation to pay salaries was not impaired by the withholding provision of the statute, although it rested on contracts that existed prior to the enactment of the statute. . . . If the *Travis Case* be considered as not reaching the precise point involved, the point is covered by the general proposition that if the state has the power to tax, no pre-existing contract in relation to the subject of the tax can operate to invalidate taxation of the subject under the contract clause of the United States constitution. *Chanler v. Kelsey*, 205 U. S. 466 . . . 51 L. Ed. 882; *State v. Mollier*, 96 Kan. 514, 152 Pac. 771, L. R. A. 1916C, 551; *Royal Mineral Asso. v. Lord* (D. C.), 13 Fed. (2d) 227, 229."

Collection at the source is merely a convenient method of collection which the State, or in this case the municipality under authority from the State, has the right to impose: 3 Cooley Taxation, 4th ed. p. 2674, sec. 1351; Commonwealth of Pennsylvania v. Lehigh Valley R. R. Co., 186 Pa. 235; Commonwealth v. Wilkes-Barre & Scranton Ry., 162 Pa. 614; Commonwealth v. Delaware & Hudson Canal Co., 150 Pa. 245; and Bell's Gap R. R. Co. v. Pennsylvania, supra.

If, as we hold, the ordinance does not impair the obligation of the employes' contracts within the meaning of the contract clause of the Constitution, it is difficult to see how it violates the Railway Labor Act. To begin with, in the Railway Labor Act of 1926, supra, c. 347, sec. 1, as amended by the Act of 1934, supra, c. 691, sec. 2, the purposes of the act are stated to be:

"(1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this Act; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

In the case of Brotherhood of Railroad Shop Crafts, etc., et al., v. Lowden et al., 86 F. (2d) 458, 460 (C. C. A. 10, 1936) 108 A. L. R. 1128, 1132, certiorari denied, 300 U. S. 659, 81 L. ed. 868, it was held:

"The plain objective of the Railway Labor Act is the amicable adjustment of disputes and in that way to avoid strikes with their harmful effect upon public interests."

An examination of the act shows that its entire background relates to the avoidance of disputes between employer and employe, and, insofar as any attempt is made therein to legislate on the subject of the compensation to be paid the employe, it merely operates on the contract between them and not on such duties as may be imposed by law on either of the parties to the contract. Plaintiffs cite those provisions of the statute which forbid a change in pay, rules, or working conditions except under certain

circumstances and urge that they bar the city from imposing on railroad companies the duty of deducting from the employes' pay the amount of the imposed tax.

It is self-evident that under the ordinance no change of rate of pay is effected by the deduction of the tax. As between the railroad and its employes the rates of pay are fixed either by contract or by law and remain unchanged. The tax imposed on the employe is based on the rate of pay so fixed. The fact that the employe will receive directly from his employer an amount less than that rate of pay does not vary the rate of pay, because the difference is paid by the employer under compulsion of law on behalf of the employe to discharge an obligation for taxes due by him.

The only provision in this act which relates to a deduction from wages is a provision forbidding the carrier "to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions": Railway Labor Act as amended, supra, sec. 2. From this it will be seen that Congress recognized the distinction between a deduction from pay and a change in the rate of pay and found it necessary to prohibit only one type of deduction from pay, to wit, union dues and assessments.

We, therefore, hold that the ordinance does not violate either the contract clause of the Constitution or the provisions of the Railway Labor Act.

For the above reasons, the court finds that the ordinance is valid and constitutional and that the bill should be dismissed.

### Decree nisi

And now, to wit, March 19, 1940, this cause having been heard on bill and stipulation, it is ordered, adjudged, and decreed:

1. That plaintiffs' bill is dismissed.
2. That plaintiffs pay the costs of these proceedings.

The prothonotary will enter this decree nisi and give notice to the parties or their counsel of record, of the entry of the decree and, if no exceptions thereto are filed within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.